No. 14-687C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

AVIATION & GENERAL
INSURANCE COMPANY, LTD., *et al.*,

Plaintiffs

v.

UNITED STATES,

Defendant.

---

# PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

---

Steven R. Perles
Edward MacAllister
PERLES LAW FIRM, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax: 202-955-3806
Email: sperles@perleslaw.com

January 22, 2014

Attorneys for Plaintiffs

TABLE OF CONTENTS

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS..**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ..................................................**Error! Bookmark not defined.**

QUESTIONS PRESENTED........................................................**Error! Bookmark not defined.**

COUNTER-STATEMENT OF THE CASE ................................**Error! Bookmark not defined.**

STANDARD OF REVIEW ..........................................................**Error! Bookmark not defined.**

ARGUMENT ..................................................................................**Error! Bookmark not defined.**

I. Plaintiffs have a Cognizable Property Interest in their Valid Claims Against Libya, which was Taken by the Defendant.............................................**Error! Bookmark not defined.**

A. Whether a Judicial Claim Creates a Cognizable Interest Under the Fifth Amendment Depends on the Private Property Behind the Cause of Action, Not its Procedural Posture at the Time of the Taking .......**Error! Bookmark not defined.**

B. Defendant's Only Federal Circuit Authority either Supports Plaintiffs' Assertion of a Property Interest in their Claims or is Inapplicable ............... **Error! Bookmark not defined.**

C. Defendant's Reliance on Takings Jurisprudence From Other Circuits is Inapposite in the Context of a Takings Claim for Monetary Damages, and Contrary to Clear Federal Circuit Precedent........**Error! Bookmark not defined.**8

D. Defendant's Proposed Test is Arbitrary, Would Work a Manifest Injustice, and Is Not Supported by Federal Circuit Precedent............ **Error! Bookmark not defined.**

II. The Federal Government's Extinguishment of Plaintiffs' Claims Against Libya, Without the Provision of an Alternate Remedy or Forum, was a Historically Unique Taking**Error! Bookmark not defined.**

III. The Political Question Doctrine Does Not Apply As Plaintiffs' Takings Claims Do Not Implicate the President's Foreign Policy Powers ............**Error! Bookmark not defined.**7

CONCLUSION........................................................................................................................ 39

# TABLE OF AUTHORITIES

CASES

*Abrahim-Youri v. United States*,
139 F.3d 1462 (Fed. Cir. 1997)........................................................................ 8, 13, 16

*Acree v. United States*,
06-cv-798 (NBF), DE 36 (Fed. Cl. Aug. 04, 2011)................................................... 33

*Adams v. Hinchman*,
154 F.3d 420 (D.C. Cir. 1998)....................................................................................... 18

*Adams v. United States*,
391 F.3d 1212 (Fed. Cir. 2004)) ............................................................................ passim

*Alliance of Descendants of Tex. Land Grants v. United States*,
37 F.3d 1478 (Fed. Cir. 1994) ........................................................................... 7, 8, 21

*Am. Pelagic Fishing Co. v. United States*,
379 F.3d 1363 (Fed. Cir. 2004)......................................................................................... 6

*Anderson v. Kimberly-Clark Corp.*,
570 Fed. Appx. 927 (Fed. Cir. 2014)................................................................................ 5

*Angle v. Chicago, St. P., M. & 0. Ry. Co.*,
151 U.S. 1 (1894)............................................................................................................ 15

*Arbour v. Jenkins*,
903 F.2d 416 (6th Cir. 1990) .......................................................................................... 18

*Armstrong v. United States*,
364 U.S. 40 (1960)................................................................................................. 1, 6, 22

Ashcroft v. Iqbal,
556 U.S. 662 (2009)...................................................................................................... 5, 6

*Aviation & General Insurance Company, Ltd.*, v. *United States*,
No. Civ. 14-687C (TCW), DE 1 (Fed. Cl. July 31, 2014).......................................... 13

*Axel Johnson, Inc. v. Arthur Andersen & Co.*,
6 F.3d 78 (2d Cir. 1993)................................................................................................. 18

*Belk v. United States*,

12 Cl. Ct. 732 (1987) .......................................................................................... 32

*Belk v. United States*,
858 F.2d 706 (Fed. Cir. 1988) ................................................................. 25, 26, 27, 30

*Branch ex. rel. Maine Nat'l. Bank v. United States*,
69 F.3d 1571 (Fed. Cir. 1995) ............................................................................. 33

*Button v. Drake*,
195 S.W.2d 66 (Ky. Ct. App. 1946) ..................................................................... 15

*Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*,
960 F.2d 1339 (7th Cir. 1992) ............................................................................. 19

*Certain Underwriters at Lloyd's London v. Socialist People's Libyan Arab Jamahiriya*,
811 F. Supp. 2d 52 (D.D.C. 2011) ................................................................ passim

*Chang v. United States*,
859 F.2d 893 (Fed. Cir. 1988) ....................................................................... 15, 34

*Cities Servs. Co. v. McGrath*,
342 U.S. 330 (1952) ........................................................................................ 8, 12

*Colonial Chevrolet Co. v. United States*,
103 Fed. Cl. 570 (Fed. Cl. 2012) ........................................................................... 6

*Conti v. United States*,
291 F.3d 1334 (Fed. Cir. 2002) ........................................................................... 14

*Demarco Durzo Dev. Co. v. United States*,
60 Fed. Cl. 632 (Fed. Cl. 2004) ............................................................................. 5

*District of Columbia v. Beretta U.S.A. Corp.*,
940 A.2d 163 (D.C. 2008) .................................................................................... 20

*Duckworth v. Mull*,
55 S.E. 850 (N.C. 1906) ....................................................................................... 14

*Eastern Enterprises v. Apfel*,
524 U.S. 498 (1988) ........................................................................................ 20, 21

*Filler v. United States*,
116 Fed. Cl. 123 (Fed. Cl. 2014) .................................................................... 18, 21

*Fleer Corp. v. Topps Chewing Gum, Inc.*,
539 A.2d 1060 (Del. 1988) ........................................................................... 15

*Fort Vancouver Plywood Co.* v. *United States,*
860 F.2d 409 (Fed. Cir. 1988) ........................................................................... 5

*Galarza v. Union Bus Lines, Inc.*,
38 F.R.D. 401 (S.D. Tex. 1965)........................................................................... 15

*Gates v. Syrian Arab Republic*,
No. Civ. 11-8715, 2013 WL 1337223 (N.D. Ill. Mar. 29, 2013).................................. 36

*Grimesy v. Huff,*
876 F.2d 738, (9th Cir. 1989) ........................................................................... 19

*Hammond v. United States,*
786 F.2d 8, 12-13, 15 (1st Cir. 1986)................................................................... 18

*Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*,
No. Civ. 98-3096 (TFH), 2007 WL 1876392 (D.D.C July 6, 2010) .................. 2, 23, 35

*Heiser v. Islamic Republic of Iran,*
807 F. Supp. 2d 9 (D.D.C. 2011) ........................................................................ 36

*Hines v. Anderson,*
547 F.3d 915 (8th Cir. 2008) ............................................................................ 18

*Huntleigh USA Corp. v. United States,*
525 F.3d 1370 (Fed. Cir. 2008)........................................................................ 6, 24

*Ileto v. Glock, Inc.,*
565 F.3d 1126 (9th Cir. 2009) ...................................................................... 20, 21

*In re TMI,*
89 F.3d 1106 (3d Cir. 1996)............................................................................. 18

*Kizas v. Webster,*
707 F.2d 524 (D.C. Cir. 1983) ...................................................................... 18, 21

*Landgraf v. USI Film Products,*
511 U.S. 244 (1994)....................................................................................... 21

*Langenegger v. United States*,
756 F.2d 1565 (Fed. Cir. 1985)........................................................................... 9

*Lingle v. Chevron U.S.A., Inc.*,
544 U.S. 528 (2005)........................................................................ 19, 22, 31, 34

*Lucas v. South Carolina Coastal Council*,
505 U.S. 1003 (1992)........................................................................... passim

*Lynch v. United States*,
292 U.S. 571 (1934)......................................................................... 7, 15

*Maritrans Inc. v. United States*,
342 F.3d 1344 (Fed. Cir. 2003)............................................................. passim

*Maritrans Inc. v. United States*,
40 Fed. Cl. 790 (Fed. Cl. 1998) ......................................................................... 33

*Marks v. United States*,
15 Cl. Ct. 609 (1988) ...................................................................................... 29

*Memorial Hospital v. Heckler*,
706 F.2d 1130 (11th Cir. 1983) ........................................................................ 19

*Penn Central Transportation Co. v. New York City*,
438 U.S. 104 (1978)........................................................................... passim

*Peterson v. Islamic Republic of Iran*,
758 F.3d 185 (2d Cir 2014)................................................................................ 36

*Plaut v. Spendthrift Farm*, Inc.,
514 U.S. 211 (1995)......................................................................................... 21

*Plyler v. Moore*,
100 F.3d 365 (4th Cir. 1996) ............................................................................. 18

*Redfern v. Collins*,
113 F. Supp. 892 (E.D. Tex. 1953)..................................................................... 15

*Republic of Iraq v. Beaty*,
556 U.S. 848 (2009)......................................................................................... 32

*Riblet Tramway Co. v. Stickey*,
523 A.2d 107 (N.H. 1987) .......................................... 15

*Rogers v. Tristar Prods., Inc.*, 559 Fed. Appx.
1042 (Fed. Cir. 2012) .......................................... 10, 16

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) .......................................... 7

*Salmon v. Schwarz*,
948 F.2d 1131 (10th Cir. 1991) .......................................... 18

*Shanghai Power Co. v. United States*,
4 Cl. Ct. 237 (1983), *aff'd*, 765 F.2d 159 (Fed. Cir. 1985) .......................... 8, 9, 13, 17

*Sperry Corp. v. United States*,
12 Cl. Ct. 736 (Cl. Ct. 1987) .......................................... 26

*Stauffer v. Brooks Bros. Group, Inc.*,
758 F.3d 1314 (Fed. Cir. 2014) .......................................... 10, 16, 17

*U.S. Trust Co. of New York v. New Jersey*,
431 U.S. 1 (1977) .......................................... 15

*United States v. General Motors Corp.*,
323 U.S. 373 (1945) .......................................... 6

United States v. Locke,
471 U.S. 84 (1985) .......................................... 34

*United States v. Sperry Corp.*,
493 U.S. 52 (1989) .......................................... 26, 29, 30

*United States v. Stonehill*,
83 F.3d 1156 (9th Cir. 1996) .......................................... 15

*Ware v. Hylton*,
3 U.S. 199 (1796) .......................................... 8

STATUTES

22 U.S.C. § 1627(e) .......................................... 38

28 U.S.C. § 1491 .......................................... 20

28 U.S.C. § 1605A(d) ........................................................................................... 15, 27

Libyan Claims Resolution Act,
Pub. L. No. 110-301 at § 4(a)(1), 122 Stat. 2999 (2008)......................................... 5, 28

OTHER AUTHORITIES

*American Heritage Dictionary* 675 (2d College Ed. 1991)........................................................ 32

*Claim of New York Marine and General Insurance Co.*,
Claim No. LIB-II-170, Decision No. LIB-II-165 (FCSC 2012) (Final Decision)......... 38

*Claim of Subrogated Interest to Pan American World Airways, Inc.*,
Claim No. LIB-II-171, Decision No. LIB-II-161 (2013) (Final Decision) ................... 38

*Claims Settlement Agreement Between the United States of America and the Great Socialist People's Libyan Arab Jamahiriya*,
2008 U.S.T. Lexis 72, entered into force Aug. 14, 2008 ............................................. 37

Executive Order No. 12,294,
73 Fed. Reg. 14111 (Feb. 24, 1981) ............................................................................. 29

Executive Order No. 13477,
73 Fed. Reg. 65,9655 (Oct. 31, 2008)............................................................................... 5

Fed. R. Civ. P. 8(a)(2)............................................................................................................... 5

Letter from the Honorable John B. Bellinger, III, Legal Adviser, Department of State, to the Honorable Mauricio J Tamargo, Chairman, Foreign Claims Settlement Commission (Jan. 15, 2009) ........................................................................................................................... 38

Letter from the Honorable John B. Bellinger, III, Legal Adviser, Department of State, to the Honorable Mauricio J. Tamargo, Chairman, Foreign Claims Settlement Commission (December 11, 2008) ...................................................................................................................... 37

*Unpaid Foreign Claims*, U.S. Department of Treasury, http://www.fiscal.treasury.gov/fsservices/gov/pmt/unpdforclaims/libya_claims.htm. ................ 38

TREATISES

Jan Laitos, *Law of Property Rights Protection: Limitations on Governmental Powers* 10-36 (2001)........................................................................................................................... 20

Restatement (Second) of the Foreign Relations Law of the United States § 185-190 (1965)...... 13

*Subrogation*, *Black's Law Dictionary* (9th ed. 2009) .................................................................... 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AVIATION & GENERAL INSURANCE COMPANY, LTD., *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 14-687C (Judge Wheeler) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

"Justice and fairness" require that Plaintiffs not be forced "alone to bear public burdens which, in all fairness and justice, must be borne by the public as a whole . . . ." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). A compensable taking must be found where, as here, the United States extinguished a large class of legal claims in order to negotiate a claims settlement agreement with a foreign sovereign, but excluded a small subclass of claimants from the alternate remedy or forum available to the rest of the class. The Takings Clause of Fifth Amendment guarantees that "nor shall private property be taken for public use, without just compensation." Plaintiffs are in the historically unique position of having had their judicially cognizable claims against a foreign sovereign extinguished without the provision of an alternate remedy or forum to provide some compensation.

Contractual obligations forced Plaintiffs—insurance companies that provided reinsurance to the original insurance contracts—to pay for losses caused by two separate terrorist attacks: 1) losses caused by the November 23, 1985 destruction of Egypt Air's Boeing 737-200 ADV passenger airplane, with registration number SU-AYH and serial number 211191, destroyed by

Libyan terrorists and 2) losses caused by personal injuries and death of all aboard Pan American Flight 103 over Lockerbie, Scotland on December 21, 1988, destroyed by Libyan terrorists. Plaintiffs filed two separate lawsuits in the United States District Court for the District of Columbia[1] against the government of Libya under the Foreign Sovereign Immunities Act ("FSIA"), which progressed successfully through the court until 2008, despite the active participation of Libya in the cases through its legal counsel.

The United States and Libya had been negotiating a claims settlement agreement designed to bring all litigation against Libya to a permanent close in order to allow U.S. businesses to invest in Libya without facing legal action from the numerous victims of Libyan terrorism who were proceeding to judgment in U.S. courts. The U.S. and Libya signed the claims settlement agreement in 2008. In order to implement the agreement with Libya, the United States extinguished all terrorism claims against Libya, including Plaintiffs' claims, but set up an alternative mechanism to compensate most claimants at the Foreign Claims Settlement Commission ("FCSC"). However the U.S. Department of State constructed the jurisdiction of the FCSC in a manner that excluded Plaintiffs. The overwhelming majority of Libya claimants received a hearing before the FCSC and, if deserving, substantial compensation. Defendant precluded Plaintiffs from even the opportunity of a hearing. Plaintiffs' claims were completely

[1] Plaintiffs in *Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*, No. Civ. 98-3096 (TFH) (D.D.C. filed December 18, 1998), were the numerous insurers of Pan Am that paid for the defense and settlement of the personal injury and wrongful death claims filed by the victims of the Libyan terrorist bombing of Pan Am 103. Plaintiffs in *Certain Underwriters at Lloyd's London v. Great Socialist People's Libyan Arab Jamahiriya*, No. Civ. 06-731 (GK) (JMF) (D.D.C. filed April 21, 2006), No. Civ. 08-504 (GK) (JMF) (D.D.C. filed March 24, 2008), were the reinsurers that paid for the aircraft hull destroyed by Libyan terrorists during the November 23, 1985 aircraft hijacking of Flight 648. Plaintiffs in this case are Aviation & General Insurance Company, Ltd., New York Marine and General Insurance Company, Certain Underwriters at Lloyds London, all of whom were insurers contractually obligated to make payments in the aftermath of both disasters.

extinguished, while most other Libya claimants were compensated. It is neither just nor fair to require Plaintiffs "alone to bear public burdens which, in all fairness and justice, must be borne by the public as a whole . . . ." *Id.*

Defendant's Motion to Dismiss claims that Plaintiffs did not possess a property interest cognizable under the Fifth Amendment, that, either way, there was not a compensable taking under the *Penn Central* factors, and furthermore that these takings claims are non-justiciable under the Political Question Doctrine. However, the Motion to Dismiss is based on three faulty analytical frameworks. Plaintiffs will demonstrate that:

(1) The Federal Circuit determines when a cause of action constitutes a property interest cognizable under the Fifth Amendment based on the nature of the "legally-recognized property interest" that the cause of action protects, not on the procedural posture thereof, as Defendant maintains. *See infra*, § I.A. Plaintiffs' causes of action, retroactively extinguished by Defendant, sought to protect their "legally recognized property interest" in an aircraft hull, a subrogated right to reimbursement for payment of damages for various personal injuries, and in their insurance contracts. Plaintiffs' causes of action themselves, therefore, constitute cognizable property interests under the Fifth Amendment. *Id.* The finality, or lack thereof, of the underlying claims is irrelevant. *Id.*

(2) Despite Defendant's representations to the contrary, to determine whether a compensable taking has occurred in the type of claim at issue, the Federal Circuit does not apply a purely regulatory takings framework. *See infra*, § II. The Federal Circuit applies a more nuanced test, elaborating on the *Penn Central* factors that Defendant enumerates. *Id.* Application of the Federal Circuit's proper test highlights the fact that no prior claimants before this Court have ever had their causes of action against a foreign sovereign

removed from Article III jurisdiction without the federal government substituting some form of alternative remedy or forum. *Id*.

(3) Throughout its motion, Defendant repeats that the Executive has the authority to negotiate claims settlement agreements. *See e.g.*, DE 11 at 17. Plaintiffs agree. *See infra*, § III. Plaintiffs allege that the purely domestic decision to exclude them from the settlement without providing an alternate remedy or forum rendered their property valueless and constituted a compensable taking. *Id*.

This Court should deny the Motion to Dismiss.

## QUESTIONS PRESENTED

1. Whether Plaintiffs' extinguished claims, which protected legally-recognized property interests including insurance contracts, real property and actions sounding in tort, constitute property interests cognizable under the Takings Clause of the Fifth Amendment.
2. Whether the Defendant's extinguishment of Plaintiffs' claims, without providing an alternative remedy or forum to hear their claims—while providing such a tribunal to nearly every other claimant affected—constitutes a compensable taking under the Takings Clause of the Fifth Amendment.
3. Whether Plaintiffs' taking claims, which do not seek an inquiry "into the heart of the President's conduct of foreign relations", are non-justiciable under the Political Question Doctrine.

## COUNTER-STATEMENT OF THE CASE

Plaintiffs do not dispute the accuracy of the Defendant's Statement of the Case. However, Defendant omitted three key events:

The Libyan Claims Resolution Act ("LCRA") required the Secretary of State to "designate 1 or more entities to assist in providing compensation to nationals of the United States, pursuant to a claims agreement", which resulted in the appointment of the Foreign Claims Settlement Commission ("FCSC"). Libyan Claims Resolution Act, Pub. L. No. 110-301 at § 4(a)(1), 122 Stat. 2999 (2008).

Executive Order Number 13,477, also providing that "[c]laims of foreign nationals within the terms of Article I are settled according to the terms of the Claims Settlement Agreement." 73 Fed. Reg. 65,965, 65,965-66 (Oct. 31, 2008).

The U.S. State Department created the jurisdiction of the FCSC through the issuance of two referral letters, dated December 11, 2008 and January 15, 2009, both of which excluded Plaintiffs from the FCSC's jurisdiction.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Anderson v. Kimberly-Clark Corp.*, 570 Fed. Appx. 927, 931 (Fed. Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). In considering a motion to dismiss under RCFC 12(b)(6), the Court must accept all "'well-pled factual allegations as true and draw all reasonable inferences in the plaintiff's favor.'" *Demarco Durzo Dev. Co. v. United States*, 60 Fed. Cl. 632, 635 (Fed. Cl. 2004) (denying the government's motion to dismiss plaintiff's taking claim) (citing *Fort Vancouver Plywood Co.* v. *United States*, 860 F.2d 409, 413 (Fed. Cir. 1988)).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 664 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663. The "burden of moving forward" on such a motion is "minimal." *Colonial Chevrolet Co. v. United States,* 103 Fed. Cl. 570, 574 (Fed. Cl. 2012).

## ARGUMENT

### I. Plaintiffs have a Cognizable Property Interest in their Valid Claims Against Libya, which was Taken by the Defendant

The U.S. Court of Federal Claims employs a two-step test to determine whether compensation is due under the Fifth Amendment for a taking of private property. "First, as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment . . . . [S]econd, 'after having identified a valid property interest, the court must determine whether the government action at issue amounted to a compensable taking of that property interest.'" *Huntleigh USA Corp. v. United States,* 525 F.3d 1370, 1377-78 (Fed. Cir. 2008) (quoting *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed. Cir. 2004)).

The Constitution does not "create or define" cognizable property interests, "'existing rules and understandings' and 'background principles' derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking . . . ." *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352-53 (Fed. Cir. 2003) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992)). The Supreme Court stated in *United States v. General Motors Corp.*, that the Fifth Amendment protects "every sort of interest the citizen may possess" and found that intangible rights such as leaseholds are property. 323 U.S. 373, 378 (1945); *see also Armstrong v. United States*, 364 U.S. 40, 44 (1960) (finding that a lien is cognizable property under the Fifth

Amendment); *Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property . . . ."). "That intangible property rights protected by state law are deserving of the protection of the Taking Clause has long been implicit in the thinking of this Court . . . ." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003 (1984).

This section will demonstrate that the answer to the first step is: yes, Plaintiffs' property interests are cognizable under the Takings Clause of the Fifth Amendment.

### A. **Whether a Judicial Claim Creates a Cognizable Interest Under the Fifth Amendment Depends on the Private Property Behind the Cause of Action, Not its Procedural Posture at the Time of the Taking**

Defendant's assertion that Plaintiffs' valid claims against Libya do not constitute a Fifth Amendment property interest cannot withstand the wealth of contrary binding precedent from the Federal Circuit. Defendant's Motion to Dismiss, DE 11 at 5-9 (hereinafter "DE 11"). In reaching this flawed conclusion, Defendant failed to present to this Court a line of Federal Circuit precedent, which relied on U.S. Supreme Court precedent, holding that valid claims against foreign sovereigns constitute a property interest, regardless of their procedural posture. For example, the plaintiffs in *Alliance of Descendants of Tex. Land Grants v. United States,* sued the United States under the Fifth Amendment for extinguishing unresolved claims against the Mexican Government. 37 F.3d 1478, 1481 (Fed. Cir. 1994). Before the *Alliance of Descendants* plaintiffs' underlying claims could be resolved, the U.S. government entered into a treaty with Mexico that removed jurisdiction of all United States tribunals over the *Alliance of Descendants* plaintiffs' claims. *Id* at 1482. Under these facts, strikingly similar to the case at bar, the Federal Circuit unequivocally held that a legal cause of action constitutes a Fifth Amendment property interest:

> Before ascertaining the time of any alleged taking action, this court examines what private property the United States allegedly took. The claimants allege that

> the United States "took" their property interest in a legal cause of action. The claimants do not in this suit allege a taking of the land in Texas itself. Rather they allege that the United States took away their legal right to sue for compensation for that land. *Because a legal cause of action is property within the meaning of the Fifth Amendment,* Cities Servs. Co. v. McGrath, 342 U.S. 330, 335-36, 72 S.Ct. 334, 337-38, 96 L.Ed. 359 (1952); Ware v. Hylton, 3 U.S. (3 Dall.) 199, 245, 1 L.Ed. 568 (1796), *claimants have properly alleged possession of a compensable property interest*.

*Id.* at 1481 (emphasis added).

Similarly, the plaintiffs in *Abrahim-Youri v. United States* filed a takings claim against the United States for extinguishing their claims against the Islamic Republic of Iran in federal court when it enforced the 1981 Algiers Accords. 139 F.3d 1462, 1463-64 (Fed. Cir. 1997). In *Abrahim-Youri* the Federal Circuit again stated that unresolved claims against a foreign sovereign constitute a property interest. *Id.* at 1465-66 ("We agree with plaintiffs that their property rights-their choses in action against Iran-were extinguished when the Government espoused and settled their claims."). The Federal Circuit based this conclusion on the Supreme Courts' recognition of a "range interests that qualify for protection as property under the Fifth Amendment . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 1467-68 (citing *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1030 (1992)).

In *Shanghai Power*, this Court[2] found a property interest in a valid claim against a foreign sovereign that *was never even filed,* let alone the subject of a final judgment. *Shanghai Power Co. v. United States,* 4 Cl. Ct. 237, 239-40 (1983), *aff'd,* 765 F.2d 159 (Fed. Cir. 1985). The *Shanghai Power* court investigated the merits of the plaintiffs' underlying cause of action, an

---

[2]As the United States Court of Federal Claims retains the original jurisdiction of the Court of Claims, Plaintiffs will refers to decisions by both the Court of Federal Claims and the Court of Claims as opinions of "this Court."

expropriation claim against the People's Republic of China, to determine that the plaintiffs had a valid property interest:

> [N]ot all interests or expectancies amount to property for purposes of the fifth amendment. As the Supreme Court has noted, only those rights "which have the law back of them" are property. *Kaiser Aetna v. United States*, 444 U.S. 164, 178, 100 S.Ct. 383, 392, 62 L.Ed.2d 332 (1979) . . . From these authorities it appears that *a plaintiff's interest will be recognized as property for purposes of the fifth amendment unless that interest is devoid of a legally enforceable right or recognition of a property interest would contravene public policy. Under this standard, plaintiff's claim against the PRC amounts to property* . . . . The right to such compensation for an expropriation is, moreover, a principle recognized in international law . . . and one the United States has consistently supported.

*Id.* at 240 (emphasis added) (internal citations omitted). The fact that the claims were never filed, and may have suffered from jurisdictional infirmities had they been[3], did not invalidate the plaintiffs' property interest in those claims; it merely diminished their value:

> To hold that plaintiff had property does not, however, establish its value . . . . That value would depend upon the likelihood of finding a forum for presenting the claim, overcoming all relevant defenses and obtaining satisfaction from the debtor's available assets. Moreover, the expense of prosecuting such a claim and obtaining satisfaction. . . .

*Id.* at 241-42. The Federal Circuit later explicitly approved of the *Shanghai Power* ruling that such claims constituted property under the Fifth Amendment: "[t]he Claims Court [in *Shanghai Power*] properly held the claims plaintiffs had against China under international law were a property right . . . ." *Langenegger v. United States*, 756 F.2d 1565, 1573 (Fed. Cir. 1985).

---

[3] The United States argued that the claims in *Shanghai Power* were not property because they were jurisdictionally barred in the United States under the Foreign Sovereign immunities Act. *Shanghai Power Co. v. United States*, 4 Cl. Ct. 237, 240 (Cl. Ct. 1983). The claims at issue in *Shanghai Power* surely would not have qualified as "vested" either, under the incorrect test advocated by the Defendant in this case. DE 11 at 5-9. However, the *Shanghai Power* court found that "[i]t is unnecessary to resolve this dispute because the existence of jurisdiction under the FSIA has no bearing on the threshold question of whether plaintiff has property for purposes of the fifth amendment." *Id.* at 241. Thus, questions such as Defendant's "vested" test, or whether Plaintiffs possessed a final and/or non-appealable judgment, are immaterial.

As discussed below, prior to the taking of their claims each Plaintiff had a forum for presenting their claims and had overcome all relevant defenses. Indeed, the Plaintiffs whose claim laid in the destruction of an aircraft hull obtained a final judgment against the Syrian Arab Republic ("Syria"), Libya's joint tortfeasor, after Libya's dismissal.[4]

**B. Defendant's Only Federal Circuit Authority either Supports Plaintiffs' Assertion of a Property Interest in their Claims or is Inapplicable**

Defendant cites three Federal Circuit decisions—which are all inapplicable to this case—for the proposition that Plaintiffs do not have a "vested" Fifth Amendment property interest in a cause of action that has not resulted in a final judgment. DE 11 at 5-7 (citing *Stauffer v. Brooks Bros. Group, Inc.*, 758 F.3d 1314, 1321 (Fed. Cir. 2014); *Rogers v. Tristar Prods., Inc.,* 559 Fed. Appx. 1042, 1045 (Fed. Cir. 2012) (nonprecedential); *Adams v. United States,* 391 F.3d 1212, 1225-26 (Fed. Cir. 2004)). Two of the three decisions, *Stauffer* and *Rogers*, do not even involve takings claims. *Stauffer*, 758 F. 3d at 1316; *Rogers*, 559 Fed. Appx. at 1043. Moreover, in both *Stauffer* and *Rogers*, the plaintiffs asserted unconstitutional deprivations of their right—though they did not argue a taking under the Takings Clause[5]—to pursue an action under the *qui tam* "bounty hunter" provisions of a federal false patent marking statute. *Stauffer*, 758 F. 3d at 1316; *Rogers*, 559 Fed. Appx. at 1043. Finally, these cases did not involve extinguished claims which protected cognizable private property, such as subrogated insurance contracts, personal injury, and an aircraft hull, but rather some form of federal entitlement which was offered to plaintiffs and then retroactively withdrawn. *Stauffer*, 758 F. 3d at 1316; *Rogers,* 559 Fed. Appx. at 1044; *Adams,* 391 F.3d at 1214-1217.

---

[4] *Certain Underwriters at Lloyd's London v. Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53 (D.D.C. 2011).

[5] The plaintiff in *Stauffer* raised a takings argument for the first time on appeal; which the Court of Appeals therefore ignored. 758 F. 3d at 1321.

While *Adams* is the only one of these three decisions cited by Defendant which involves a takings claim against the United States—*Adams* actually stands for the exact opposite proposition for which Defendant cites it. As discussed below, *Adams* found that a cause of action, under circumstances such as those found here, can be private property cognizable under the Fifth Amendment, regardless of its procedural posture. *Id.* at 1225-1226.

Defendant cites *Adams* for the proposition that "Courts repeatedly have recognized that that causes of action (particularly ones sounding in tort) do not constitute cognizable or "vested" property." DE 11 at 5 (citing *Adams*, 391 F. 3d at 1225-26). This citation is perplexing as the extinguished claims in *Adams* did not "sound in tort". They were claims by former federal employees for overtime pay under the Fair Labor Standards Act ("FLSA"), and their administrative claims for the same, which had been extinguished. *Adams,* 391 F.3d at 1214, 1218. When Congress shortened the statute of limitations for an FLSA claim from six to two years, the *Adams* plaintiffs sued the United States, arguing that this legislative action constituted a taking of four years of their previously valid FLSA claims. *Id*. at 1219. The Federal Circuit dismissed this claim because "Appellants confuse a property right cognizable under the Takings Clause of the Fifth Amendment with a due process right[6] to payment of a monetary entitlement under a compensation statute." *Id.* at 1220. The takings claim in *Adams* did not fail because a cause of action is not considered private property, but because the property itself underlying the cause of action in that particular case was not cognizable under the Fifth Amendment Takings Clause. *Id.* at 1220, 1226.

[6] This holding in *Adams* is also significant because it highlights a difference between a Due Process Clause claim and a Takings Clause claim, which demonstrates the problems with Defendant's constant citation to Due Process decisions throughout its Motion to Dismiss.

Thus, the *Adams* decision controverts Defendant's position in its Motion to Dismiss, that only a "vested", final and non-appealable judgment can be considered private property:

> Although we agree with Appellants that sometimes a cause of action may fall within the definition of property recognized under the Takings Clause, we observe, like the Court of Federal Claims, *that precedent has limited the application of the Takings Clause to cases in which the cause of action protects a legally-recognized property interest*. See, e.g., Cities Serv. Co. v. McGrath, 342 U.S. 330, 96 L. Ed. 359, 72 S. Ct. 334 (1952)

*Id.* at 1225-26 (emphasis added). The *Adams* court judged whether a cause of action constituted property under the Fifth Amendment by the quality of the rights that it protected, rather than by its procedural posture.

The *Adams* plaintiffs also argued that the United States took their private property when it extinguished their administrative claims for the unpaid overtime pay before the General Accounting Office ("GAO"). *Id.* at 1225. The Federal Circuit held that the *Adams* plaintiffs did not have a property interest in their extinguished administrative claims for the same reason that it denied the taking claim based upon the unpaid overtime pay due under the FLSA: the *Adams* plaintiffs had failed to demonstrate that legally-recognized private property rights laid underneath the causes of action that had allegedly been "taken". *Id.* at 1226 ("Appellants have not cited any precedent finding such a property interest in a claim of Government liability before an administrative agency. Hence, we conclude that Appellants do not possess a cognizable property interest in any part of their administrative claim. . . .").

While the *Adams* court did not find a cognizable Fifth Amendment property interest, the Federal Circuit did find that "sometimes *a cause of action may fall within the definition of property recognized under the Takings Clause*" when that "cause of action protects a legally-recognized property interest . . . under state and common law." *Id.* at 1225-26 (emphasis added). More specifically, the Federal Circuit reaffirmed its holding in *Alliance of Descendants*,

discussed above at p. 7, that a cause of action which protects a legally-recognized property interest is property for Takings Clause purposes: "[The *Adams* plaintiffs'] reliance on *Alliance of Descendants* is utterly misplaced because *the cause of action there was to recover compensation for an interest in land, a property interest cognizable under established takings jurisprudence* because land is, beyond question, property under state and common law.") (emphasis added).

This ruling is consistent with numerous other rulings by the Federal Circuit and the Supreme Court. "[T]he Supreme Court stated that the range of interests that qualify for protection as 'property' under the Fifth Amendment are defined by existing rules or understandings that stem from an independent source such as state law." *Abrahim-Youri v. United States*, 139 F.3d at 1467 (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992); *Shanghai Power Co. v. United States*, 4 Cl. Ct. at 240, *aff'd,* 765 F.2d 159 (Fed. Cir. 1985) (holding that plaintiffs have a Fifth Amendment property interest in their claim because the cause of action had an independent basis in both common and international law) (citing Restatement (Second) of the Foreign Relations Law of the United States § 185-190 (1965)).

In this case, Plaintiffs' causes of action against Libya sought to protect property interests universally recognized under state and common law. Plaintiffs are all insurance providers who received a subrogated interest in the Egypt Air Flight 648 aircraft hull and/or[7] Pan Am Flight 103

[7] Plaintiffs in this case are Aviation & General Insurance Company, Ltd., New York Marine and General Insurance Company, Certain Underwriters at Lloyds London. They all have a subrogated interest in the liability insurance payout made to the Egypt Air Flight 648 insurance companies that paid monies to compensate the original insurers who covered the value of the aircraft hull after Libyan terrorists destroyed it. *See Aviation & General Insurance Company, Ltd.*, v. *United States*, No. Civ. 14-687C (TCW), DE 1 at ¶ 10-12 (Fed. Cl. July 31, 2014). Additionally, Aviation & General Insurance Company, Ltd. and Certain Underwriters at Lloyds London also have a subrogated interest in the liability insurance made to the victims of the Libyan terrorist bombing of Pan Am Flight 103. *Id.*

personal injuries damages after the payment of compensation to the victims of those attacks under the applicable insurance contracts. Complaint, DE 1 at ¶ 10-12, 27, 35 ("DE 1"). As subrogees to the claims of victims of Libyan terrorism, Plaintiffs are "entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy." Subrogation, *Black's Law Dictionary* (9th ed. 2009) ("Subrogation most commonly arises in relation to insurance policies."). Thus, as explained more fully below, Plaintiffs' causes of action against Libya sought to protect their "legally-recognized property interest" in an aircraft hull, in a host of personal injuries, and in the insurance contract itself.

First, Plaintiffs Aviation & General Insurance Company, Ltd., New York Marine and General Insurance Company, and Certain Underwriters at Lloyds London's possessed causes of action against Libya that sought to protect their subrogated interest in the aircraft hull, which like land, is a "legally-recognized property interest." The Federal Circuit has held that plaintiffs have a cognizable property interest in tangible property, including commercial vehicular hulls, as they are property under state and common law. *Maritrans Inc. v. United States*, 342 F.3d at 1352-53 (citations omitted); *see also Conti v. United States*, 291 F.3d 1334, 1343 (Fed. Cir. 2002) (finding that plaintiff had a cognizable property interest in a fishing vessel and all of its equipment).

Second, Plaintiffs Aviation & General Insurance Company, Ltd. and Certain Underwriters at Lloyds London's causes of action against Libya sought to protect their subrogated interest in the payments made to the insured as a result of the deaths of everyone on board Pan Am Flight 103. In the majority of state law jurisdictions, personal injury and other torts are legally recognized property. *See e.g. Duckworth v. Mull*, 55 S.E. 850, 852 (N.C. 1906) ("A right to sue for an injury is a right of action; it is a thing in action, and is property."); *Angle*

*v. Chicago, St. P., M. & 0. Ry. Co.*, 151 U.S. 1, 19 (1894) (under Wisconsin law "[a] right of action to recover damages for an injury is property."); *United States v. Stonehill*, 83 F.3d 1156, 1159-60 (9th Cir. 1996) (California Civil Code and case law considers causes of action, such as tort, property); *Galarza v. Union Bus Lines, Inc.*, 38 F.R.D. 401, 404 (S.D. Tex. 1965) (Texas law considers recovery for personal injuries a property right); *Redfern v. Collins*, 113 F. Supp. 892, 895 (E.D. Tex. 1953) (under Texas law, right to sue for damages in tort is a property interest); *Button v. Drake*, 195 S.W.2d 66, 69 (Ky. Ct. App. 1946) (holding that choses in action are personal property); *Md. Cas. Co. v. Brown*, 321 F. Supp. 309, 311 (D. Ga. 1971) (Georgia law considers "a right to bring an action" to be property "whether actual or compensatory damages are involved") (citation omitted). Given that a personal injury claim is a well-established property interest under state and common law, *id.*, it, like land, is a "legally-recognized property interest" that Plaintiffs' extinguished causes of action sought to protect. *See Adams*, 391 F.3d at 1226.

Third, the insurance contracts that Plaintiffs sought to enforce by suing Libya under 28 U.S.C. § 1605A(d) are, like land, a "legally-recognized property interest." *See e.g., Lynch v. United States*, 292 U.S. 571, 579 (1934) ("Valid contracts are property, whether the obligor be a private individual, a municipality, a state, or the United States"); *Chang v. United States*, 859 F.2d 893, 895 (Fed. Cir. 1988); *U.S. Trust Co. of New York v. New Jersey*, 431 U.S. 1, 19 (1977) ("Contract rights are a form of property and as such may be taken for a public purpose provided that just compensation is paid.") (citation omitted). Contracts are "among the more traditional forms of property" under state law. *See Riblet Tramway Co. v. Stickey*, 523 A.2d 107, 111 (N.H. 1987); *see also Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988) ("The rights arising out of contracts have long been recognized as property rights.").

In addition to *Adams*, Defendant also cited *Stauffer* and *Rogers* for the proposition that Plaintiffs "do not possess a cognizable property interest for constitutional purposes" because they do not possess a final judgment. DE 11 at 6. As with *Adams*, neither *Stauffer* nor *Rogers* involved a cause of action which "protects a legally-recognized property interest . . . under state and common law," but rather involved causes of action that merely protect a federally created right, the *qui tam* "bounty". *See Adams*, 391 F.3d at 1225-26; *Stauffer*, 759 F.3d at 1316-18; *Rogers*, 559 Fed. Appx. at 1045 (the plaintiffs' *qui tam* award "was an award of statutory creation, which, prior to final judgment, was wholly within the control of Congress." (quoting *United States ex rel. Rodriguez v. Weekly Publications, Inc.*, 144 F.2d 186, 188 (2d Cir. 1944))) (citation omitted).

*Adams, Stauffer* and *Rogers* do not support an argument that a cause of action is not a property interest cognizable under the Fifth Amendment. However, they do instruct that when determining the existence of a cognizable property interest in an extinguished cause of action, the Federal Circuit looks to the nature of the interest "protected" by the cause of action before evaluating the procedural posture of that claim. *See e.g., Adams*, 391 F.3d at 1226; *Stauffer*, 759 F.3d at 1316-18; *Rogers*, 559 Fed. Appx. at 1045. Where the protected interest is a "legally-recognized property interest," such as land, an inquiry into the procedural posture of the claim is immaterial. *See Adams*, 391 F.3d at 1226 (explaining that the non-final judgment in *Alliance of Descendants* was a "property interest cognizable under established takings jurisprudence" because the property protected by that cause of action, land, is property under state and common law.); *see also Abrahim-Youri v. United States*, 139 F.3d at 1463-65 (where extinguished causes of action protected interest in "contracts ..., expropriations or other measures affecting property rights", not discussing the procedural posture of the claim at any point); *Shanghai Power Co. v.*

*United States*, 4 Cl. Ct. at 239 (where protected property interest was land and tangible property, not discussing the procedural posture of the claim at any point). Accordingly, the legally-recognized property interests protected by Plaintiffs' extinguished causes of action, tangible property, personal injury, and contract, each provide an independent basis for finding that Plaintiffs possessed a property interest cognizable under the Fifth Amendment.

Thus what appears to be two irreconcilable lines of Federal Circuit precedent, those Federal Circuit opinions holding that a cause of action constitutes a property interest irrespective of procedural posture, and those cited by Defendant that hold that non-final judgments are not "vested", are actually fully consistent. The latter, such as *Adams, Stauffer,* and *Rogers* involve extinguished administrative claims or federal statutorily created rights, not state and common law recognized property interests such as land, contract, tangible property and personal injury. *See Stauffer*, 758 F.3d at 1323 (extinguished cause of action is a federal *qui tam* bounty); *Rogers*, 559 Fed. Appx. at 1043 (same); *Adams*, 391 F.3d at 1214-19 (extinguished cause of action is an administrative claim for overtime pay under a federal employment statute). The former, such as *Shanghai Power*, *Abrahim-Youri*, and *Alliance of Descendants*, where the courts found a cognizable property interest in a cause of action, matches the circumstances of the case at hand.

While *Adams* supports Plaintiffs' case, *Stauffer* and *Rogers* are simply inapplicable. As the current matter arises out of the United States' extinguishment of valid claims protecting legally-recognized property rights, an aircraft hull, personal injury, and insurance contracts, the Federal Circuit in *Adams* authorizes this Court to recognize Plaintiffs' Fifth Amendment property interest. *Adams*, 391 F.3d at 1225-1226.

### C. Defendant's Reliance on Takings Jurisprudence From Other Circuits is Inapposite in the Context of a Takings Claim for Monetary Damages, and Contrary to Clear Federal Circuit Precedent

Defendant cites twelve opinions from courts of appeal in other circuits for the proposition that the term "property" in the Takings Clause of the Fifth Amendment, does not include non-final judgments. DE 11 at 5-7. At face value, this series of citations appears to indicate a broad consensus among federal courts that non-final judgments are not property under the Takings Clause. However, it must be noted that only four of these twelve cited opinions actually discuss the Takings Clause.[8] Decisions that analyze deprivation of rights under the Due Process Clause of the Fifth Amendment, versus the Takings Clause, are of little use to this Court. "[T]he fifth amendment employs two independent clauses to address two independent issues. A claim of deprivation of property without due process of law cannot be blended as one and the same with the claim that property has been taken for public use without just compensation.'" *Filler v. United States*, 116 Fed. Cl. 123, 131 (Fed. Cl. 2014) (quoting *Kizas v. Webster*, 707 F.2d 524, 539 (D.C. Cir. 1983) (internal citations omitted).

---

[8] Specifically, the courts in both *Hammond* and *Adams* found that this Court had exclusive jurisdiction over takings claims and so declined to reach the issue. *Hammond v. United States*, 786 F.2d 8, 12-13, 15 (1st Cir. 1986) ("[W]e have no jurisdiction to consider a taking claim where the amount in controversy exceeds $10,000. Plaintiff claims several million dollars in compensation. The proper forum for such a claim is the Court of Claims."); *Adams v. Hinchman*, 154 F.3d 420, 424 (D.C. Cir. 1998) ("We are without jurisdiction to decide this claim. The usual remedy for unconstitutional takings is a suit for money damage (i.e., the 'just compensation' that the Constitution assures)") (quotations omitted). *In re TMI* does not discuss the Takings Clause at all and only mentions the Fifth Amendment Due Process Clause in a footnote. *In re TMI*, 89 F.3d 1106, 1113 n.9 (3d Cir. 1996). Neither *Arbour* nor *Hines* mention the Fifth Amendment. *Arbour v. Jenkins*, 903 F.2d 416 (6th Cir. 1990); *Hines v. Anderson*, 547 F.3d 915 (8th Cir. 2008). *Salmon*, *Plyler* and *Axel Johnson* are all Fifth Amendment Due Process decisions, and do not mention the Takings Clause at all. *Salmon v. Schwarz*, 948 F.2d 1131, 1142-43 (10th Cir. 1991); *Plyler v. Moore*, 100 F.3d 365, 373 (4th Cir. 1996); *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 6 F.3d 78, 83-84 (2d Cir. 1993). These decisions have no bearing on this Court's Takings Clause analysis.

As the Supreme Court explained in *Lingle v. Chevron U.S.A., Inc*., the Due Process Clause and the Takings Clause have two completely different aims; the latter being "designed not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." 544 U.S. 528, 536-37, 543 (2005) (rejecting application of a due process "formula" to a takings claim) (emphasis in original). The due process formula rejected by the Court "reveals nothing about the *magnitude or character of the burden* a particular regulation imposes upon private property rights. Nor does it provide any information about how any regulatory burden is *distributed* among property owners." *Id*. at 542 (emphasis in original). This is a completely different analysis than found in a Fifth Amendment takings claim, which asks whether state, federal, or common law, has sufficiently "defined the dimensions of the requisite property rights." *See e.g.*, *Maritrans Inc.*, 342 F.3d at 1352-53. Thus, the Fifth Amendment procedural due process decisions cited by Defendant, are of little use to the Court.

Of the four decisions Defendant cites that actually involve a taking claim, three involve entitlements created by federal statute that were later revoked,[9] which as discussed above, *see*

[9] *Central States* was brought by a pension fund when a federal law revoked the fund's right to sue a client for ERISA-mandated withdrawal payments. *Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1340-41 (7th Cir. 1992). *Memorial Hospital* was brought by a group of hospitals after dismissal of their suit for Medicare reimbursement payments against a "fiscal intermediary" of HHS. *Memorial Hospital v. Heckler*, 706 F.2d 1130, 1137-38 (11th Cir. 1983) ("[T]he Hospitals argue that application of section 106 to their Hill-Burton claim would result in an unconstitutional taking of their property without just compensation in violation of the fifth amendment . . . Upon joining the Medicare program, however, the hospitals received a statutory entitlement, not a contractual right."). Similarly, the plaintiffs in *Grimesy* alleged a taking after a federal law mooted their AFDC benefit claims. *Grimesy v. Huff*, 876 F.2d 738, 739-40, 43-44 (9th Cir. 1989). These claimants had no takings claim because their lawsuits were based upon statutory rights that did not attach to traditionally recognized private property. These statutory rights could not mature to the status of private property—compensable under the Fifth Amendment Takings Clause—until the claimants had a

*supra*, § I.B. at 10-14, have no analytical value in the present action. *See Adams v. United States*, 391 F.3d at 1225-1226. Once the chaff is cleared, we are left with a single, colorably germane, Ninth Circuit case [10], *Ileto*. DE 11 at 7 ("We have squarely held that . . . a party's property right in any cause of action does not vest until a final unreviewable judgment is obtained." (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1141 (9th Cir. 2009))). *Ileto* provides no useful guidance in this case for a host of reasons.

First, to the extent that *Ileto*—or any other authority cited by Defendant—calls for a blanket denial of property rights in causes of actions that have not reached a final judgment, such authority stands directly contrary to Federal Circuit jurisprudence which holds that plaintiffs have a property interest in claims that defend state and common law property interests. *See supra*, § I.A.; § I.B. at 10-14.

Moreover, the Fifth Amendment jurisprudence of other federal jurisdictions is of limited persuasive value in this case. Under the Tucker Act, 28 U.S.C. § 1491, the Court of Federal Claims has exclusive jurisdiction to render judgment upon any claim founded upon the Constitution against the United States for money damages exceeding $10,000. Accordingly, most Fifth Amendment takings claims "must be brought to the Court of Federal Claims in the first instance . . . ." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 519 (1988). As one scholar has noted, "Judges of the [Court of Federal Claims] and the Federal Circuit hear more takings claims than most federal or state judges, and as a result . . . have considerable experience with and

---

final judgment because the statutory rights were not property that existed except by the will of Congress.

[10] Defendant also refers to a case from outside the federal judiciary, the D.C. Court of Appeals opinion in *District of Columbia v. Beretta U.S.A. Corp.*, 940 A.2d 163 (D.C. 2008). *Beretta* has a materially identical fact pattern, legal basis, and holding as found in *Ileto*, and is therefore of the same limited persuasive value in the current matter.

expertise in takings law." Jan Laitos, *Law of Property Rights Protection: Limitations on Governmental Powers* at 10-36 (2001).

However, federal district courts have jurisdiction over cases in which plaintiffs challenge a statute as unconstitutional under the Fifth Amendment and seek injunctive relief, rather than monetary damages. *Eastern Enterprises*, 524 U.S. at 499. Unsurprisingly, the concept of a "property interest" in the context of invalidating a statute under the Due Process Clause of the Fifth Amendment differs from the definition employed by this Court and the Federal Circuit when determining whether or not to impose monetary damages against the United States. *Compare Ileto v. Glock, Inc.*, 565 F.3d at 1141, *with Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d at 1481. Indeed, plaintiffs in cases like *Ileto*, who sought to strike down a statute under "equal protection and substantive due process principles", "face an uphill battle" and must prove "irrational or arbitrary conduct" on the part of the federal government in order to prevail. *See Ileto*, 565 F.3d at 1140-41. *Ileto* is unpersuasive here because it fundamentally a due process opinion; the 16 page decision devotes two sentences to its holding on a takings claim, which largely stems from an analysis under the Due Process Clause of the Fourteenth Amendment. 565 F.3d at 1141.

Defendant mixes and matches terminology from decisions which use a different test (rational basis) to analyze Fifth Amendment Due Process claims[11], without even attempting to draw a coherent analogy to the matter at hand (a takings claim for monetary damages).[12] Nor is

[11] "[T]he fifth amendment employs two independent clauses to address two independent issues. A claim of deprivation of property without due process of law cannot be blended as one and the same with the claim that property has been taken for public use without just compensation.'" *Filler v. United States*, 116 Fed. Cl. 123, 131 (Fed. Cl. 2014) (quoting *Kizas v. Webster*, 707 F.2d 524, 539 (D.C. Cir. 1983) (internal citations omitted).

[12] Defendant's reference to the Supreme Court opinions in *Landgraf* and *Plaut* provides no meaningful guidance in this regard. First, both opinions *deny* retroactive effect to the federal

such an analogy possible. The fact that a plaintiff does not have a property interest sufficient to merit striking down a statute (under the Due process Clause) does not mean that such a plaintiff does not have a property interest cognizable under the Takings Clause. As the Supreme Court explained in *Lingle v. Chevron U.S.A., Inc.*, the Due Process Clause and the Takings Clause have two completely different aims, one "is designed not to limit the governmental interference with property rights *per se,* but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." 544 U.S. 528, 536-37, 543 (2005) (rejecting application of a due process "formula" to a takings claim) (emphasis in original). The due process formula rejected by the Court "reveals nothing about the *magnitude or character of the burden* a particular regulation imposes upon private property rights. Nor does it provide any information about how any regulatory burden is *distributed* among property owners." *Id*. at 542 (emphasis in original).

Accordingly, Defendant's due process decisions are inapplicable here. Plaintiffs filed this takings claim not to challenge the government's authority to act, but to seek compensation

---

statutes in question. *Plaut v. Spendthrift Farm,* Inc., 514 U.S. 211, 240 (1995) ("We know of no previous instance in which Congress has enacted retroactive legislation requiring an Article III court to set aside a final judgment, and for good reason."); *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) ("[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic. Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted."). Second, while both opinions *discuss in dicta* the obligation of Article III courts to follow the law at the time their decision, *neither considers the question before this Court:* whether the federal government has "*forc[ed] some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole*." *Lucas v. South Carolina Coastal Council,* 505 U.S. at 1071 (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)) (emphasis added). The "Article III limitations" on federal courts discussed by *Landgraf* and *Plaut* have no bearing on whether or not Congress owes Plaintiffs compensation under the Takings Clause of the Fifth Amendment.

for the unequal *distribution* of the burden imposed by Defendant's claims settlement program. For the above reasons, this Court should limit its property interest analysis to Takings Clause jurisprudence from this jurisdiction and find that Plaintiffs have a cognizable property interest in their extinguished claims.

### D. Defendant's Proposed Test is Arbitrary, Would Work a Manifest Injustice, and Is Not Supported by Federal Circuit Precedent

As demonstrated in Section I.A., Federal Circuit doctrine supports treating Plaintiffs' claims against Libya as a Fifth Amendment property interest because their causes of action against Libya protected legally recognized property interests. *See e.g., Adams*, 391 F.3d at 1225-26. Defendant incorrectly asserts that because Plaintiffs did not obtain a final judgment, they have no such property interests in their claims. DE 11 at 4-9. Defendant is not only incorrect as a matter of law, but focuses on a distinction without a difference. The fact that the government intervened in Plaintiffs' suits against Libya before they could reach final judgment is an accident of timing, not an indictment of the merits of those cases.

Plaintiffs' causes of action arose from Libya's bombing of Pan Am Flight 103 and hijacking of Egypt Air Flight 648. Libya did not dispute Plaintiffs' assertion in open court that Libyan intelligence agents acting in the scope of their employment carried out the bombing of Pan Am Flight 103. *Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*, No. Civ. 98-3096 (TFH), 2007 WL 1876392, at *9 (D.D.C July 6, 2010). Likewise, the Defense Intelligence Agency of the United States Department of Defense, and other intelligence agencies determined that the hijacking of the Egypt Air Flight 648 was conducted with Libya's material support. DE 1 at ¶ 16.

Additionally, there can be no doubt as to any jurisdictional or sovereign immunity related defects in Plaintiffs' underlying cause of action, as the district court rendered a judgment against

the government of Syria, Libya's co-conspirator in the Egypt Air attack. *Certain Underwriters at Lloyd's London v. Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d 53 (D.D.C. 2011). To speculate that, without the federal government's intervention, Plaintiffs' claims against Libya would result in anything but a final monetary judgment, is not only unrealistic, it is not the appropriate inquiry to identify a cognizable property interest in this case. In the aftermath of the Agreement, nearly every plaintiff with a lawsuit against Libya that had been extinguished received a merits hearing before the designated alternative claims tribunal regardless of the procedural disposition of their extinguished claims. Plaintiffs were denied that right. DE 1 at ¶¶ 49-59. Thus, Defendant's proposed requirement that Plaintiffs obtain a final non-appealable judgment to enjoy a property interest in their claims for compensatory damages not only ignores a wealth of contrary precedent from the Federal Circuit and the Supreme Court, but would also work a gross injustice if applied in this case.

## II. The Federal Government's Extinguishment of Plaintiffs' Claims Against Libya, Without the Provision of an Alternate Remedy or Forum, was a Historically Unique Taking

Plaintiffs have demonstrated that their causes of action constituted a cognizable property interest under the Takings Clause of the Fifth Amendment. Plaintiffs have, therefore, satisfied the first step the U.S. Court of Federal Claims' two-part inquiry used to determine whether compensation is due under the Fifth Amendment's Takings Clause. Second, "after having identified a valid property interest, the court must determine whether the government action at issue amounted to a compensable taking of that property interest." *Huntleigh USA Corp. v. United States*, 525 F.3d at 1378 (internal citations omitted).

In arguing that no compensable taking has occurred, Defendant applies the familiar *Penn Central* factors, DE 11 at 9-17, but this is the wrong analytical framework. Takings claims arising from the extinguishment of choses in action through foreign claims settlement

agreements are subject to a more nuanced test than the three, oft-recited *Penn Central* factors. *See Abrahim-Youri v. United States*, 139 F.3d at 1465-66. As the Federal Circuit explained, the extinguishment of a cause of action through a claims settlement treaty is neither purely a *per se* taking nor a regulatory taking:

> The Supreme Court has made it clear that [regulatory and *per se* takings] call for two different analytical approaches. We agree with plaintiffs that their property rights-their choses in action against Iran-were extinguished when the Government espoused and settled their claims. After the espousal by the United States, *the choses in action were not simply regulated in some manner, but were terminated*; plaintiffs no longer had claims against Iran, but instead had a claim against the fund to be allocated by the Commission. *In that sense plaintiffs are correct that this fact pattern does not fit comfortably in the regulatory taking category, the category to which the Penn Central analysis traditionally applies*.

*Id.* at 1465-66 (emphasis added) (citation omitted).

Accordingly, in *Abrahim-Youri*, the Federal Circuit declined to follow the trial court's application of the *Penn Central* factors, instead focusing on elements of the test discussed below, such as the extent to which "the private party is the particular intended beneficiary of the governmental activity," and whether or not "the Government provided an alternative tailored to the circumstances." *Id*. at 1465, 1466, 1468 (citing *Belk v. United States*, 858 F.2d 706, 709 (Fed. Cir. 1988)). The Federal Circuit's five-factor test, stated below, is "an explication" of the *Penn Central* factors, reflecting the "unusual facts of this case," that is, a case in which the plaintiffs' cause of action against a foreign sovereign were extinguished through a claim settlement agreement. *Belk*, 858 F.2d at 709. As the five-factor test encompasses the *Penn Central* factors, applying them would not only be redundant, it would ignore "the unusual facts" of cases like *Abrahim-Youri, Belk, Shanghai Power,* and this one. *See id*. ("These [five] factors are an explication, reflecting the unusual facts of this case, of our prior statement that the principal factors in a takings analysis are [the three *Penn Central* factors].") (citation omitted).

Thus, when presented with claims such as Plaintiffs';[13] this Court and the Federal Circuit do not mechanistically apply *Penn Central*, but rather weigh the following factors: (1) "the degree to which the property owner's rights were impaired" (2) "the extent to which the property owner is an incidental beneficiary of the governmental action" (3) "the importance of the public interest to be served (4) "whether the exercise of governmental power can be characterized as novel and unexpected or falling within traditional boundaries," and (5) "whether the action substituted any rights or remedies for those that it destroyed." *Shanghai Power Co.,* 4 Cl. Ct. at 242-43, *aff'd,* 765 F.2d 159 (Fed. Cir. 1985) (citing nearly a dozen Supreme Court decisions, including *Penn Central*); *United States v. Sperry Corp.*, 493 U.S. 52, 63-64 (1989) (focusing, though not in such terms, on the first, second, and fifth factors); *Abrahim-Youri*, 139 F.3d at 1466-68 (applying the second and fifth factors);, 858 F.2d at 709 (Fed. Cir. 1988) (applying the same five factor test as *Shanghai Power*); *Sperry Corp. v. United States*, 12 Cl. Ct. 736, 739-40 (Cl. Ct. 1987) (acknowledging the five factor test and applying the first, second, and fifth factors, the same factors the Supreme Court addressed on appeal).

The first factor is straightforward and weighs in favor of finding that a compensable taking occurred in this case. Plaintiffs' property interests have been entirely extinguished. The Federal Government removed jurisdiction from *every* United States forum that could hear the merits of Plaintiffs' claims against Libya (both Article III courts *and* the Foreign Claims Settlement Commission ("FCSC"). DE 1 at ¶¶ 58-59. Accordingly, Plaintiffs' property interest is now valueless.

[13] Fifth Amendment takings claims arising from the extinguishment of a cause of action against a foreign sovereign as part of a mandatory claims settlement agreement.

Defendant attempts to sow doubt regarding the viability—and therefore value—of Plaintiffs' underlying cause of action. DE 11 at 12. However, the U.S. District Court in the case against Syria, Libya's co-conspirator, issued a judgment under 28 U.S.C. § 1605A(d) in favor of those Plaintiffs that insured the aircraft hull. *Certain Underwriters at Lloyd's London v. Socialist People's Libyan Arab Jamahiriya*, 811 F. Supp. 2d at 53. Combined with the fact that Libya's culpability for both terrorist attacks that created Plaintiffs' damages is a matter of public record, DE 1 at ¶¶ 16-19, 30, the Defendant's doubts regarding Plaintiffs' standing and "viable legal theory" in the underlying cause of action ring hollow. Moreover, even if Plaintiffs were unlikely to prevail in their claim against Libya—which is disproved by their successful record in the *Hartford* case and the judgment issued in *Certain Underwriters*—it has little bearing on the present inquiry; a total extinguishment of even small value is still a total extinguishment. Defendants' arguments regarding the value of the property interests are irrelevant until this Court reaches the damages phase of this litigation.

The second and fifth factors both highlight the fact that Plaintiffs received no "incidental benefit" of any kind from the Claims Settlement Agreement and therefore support finding that a compensable taking occurred in this case. In contrast, the plaintiffs in *Belk* were the embassy hostages that were the subject of the Algiers Accords, the ratification of which secured their release. *Belk*, 858 F.2d at 709. Defendant quotes a portion of *Belk*: "where, as here, the private party is the particular intended beneficiary of the governmental activity, 'fairness and justice' do not require that losses which may result from that activity 'be borne by the public as a whole,' even though the activity may also be intended incidentally to benefit the public." DE 11 at 16-17. However, Plaintiffs are not freed hostages, nor have they received any other "incidental

benefit" from Defendant, as did the overwhelming majority of the other Libya claimants, who received a hearing before the FCSC and, if deserving, substantial compensation.

Similarly, the *Abrahim-Youri* court determined whether a taking had occurred by analyzing whether the claimants had received any benefit from the U.S. government action:

> We disagree with plaintiffs' assessment of the Settlement Agreement. The Settlement Agreement was entered into by the Government in an effort to resolve what had become a problem for the small claimants as well as for the Government, not to harm them or to gain a government benefit at their expense.

139 F.3d at 1467. In the case the of U.S.-Libya claims settlement program, those U.S. nationals who were compensated under the Claims Settlement Agreement received an "incidental benefit" from the Agreement, they were compensated, albeit at lower rates than they would have received in court. By contrast, the U.S. State Department excluded Plaintiffs from the FCSC's jurisdiction, despite the total extinguishment of their claims in U.S. court.

Moreover, Defendant substituted no "rights or remedies for those that it destroyed" when it extinguished Plaintiffs' claims. Defendant removed jurisdiction over Plaintiffs' claims from both the Article III courts and the FCSC. DE 1 at ¶¶ 58-59. Defendant substituted rights and remedies for other similarly situated plaintiffs by requiring the Secretary of State to "designate 1 or more entities to assist in providing compensation to nationals of the United States, pursuant to a claims agreement", which resulted in the appointment of the FCSC. Libyan Claims Resolution Act, Pub. L. No. 110-301 at § 4(a)(1), 122 Stat. 2999 (2008). The Supreme Court's analysis of the second factor in *Sperry v. United States* provides a stark contrast to Plaintiffs' situation:

> *Nor did Sperry suffer the deprivation of its claim against Iran, since it presented the claim to the Tribunal and settled it for a substantial sum*, and now makes no claim that the award was less than could have been recovered in ordinary litigation . . . . *Sperry's contention that it did not benefit from the procedures established by the Accords is rejected, since those procedures assured Sperry that its award could be enforced in the courts of any nation* and actually paid in this country.

*United States v. Sperry Corp*., 493 U.S. at 52-53 (emphasis added). Similarly, the United States offered the plaintiffs in *Abrahim-Youri* an alternative remedy by representing them at the tribunal and "negotiate[ing] a settlement with Iran for the small claimants on the best terms it could." 139 F.3d at 1466. As is discussed below, Defendant's failure to provide any "incidental benefit" or "substituted right" to Plaintiffs in this case is historically unique.

The third factor is subject to several interpretations. On the one hand, there was a general public interest in the normalization of the United States' relations with Libya. On the other hand, there was no public interest in discriminatorily excluding Plaintiffs from enjoying the fruits of that settlement, especially given that those Plaintiffs paid millions of dollars to compensate United States citizens for the carnage caused by Libyan terrorism. The discriminatory treatment of Plaintiffs is unique.

As for the fourth factor, when compared to all previous foreign claims settlement efforts, Defendant's implementation of the U.S.-Libya Claims Agreement is unquestionably "novel and unexpected." Defendant's total extinguishment of jurisdiction over Plaintiffs' claims against a foreign state, without the provision of an alternate remedy or forum, is an issue of first impression for this Court and unprecedented in United States history. For example, Executive Order No. 12,294, 73 Fed. Reg. 14111 (Feb. 24, 1981), which implemented the Algiers Accord between Iran and the United States, merely "suspended" Article III jurisdiction over claims against Iran. Any claim which the Iran-U.S. Claims Tribunal did not resolve on the merits was later returned to an Article III court. *Marks v. United States*, 15 Cl. Ct. 609, 612-13 (1988) ("Plaintiffs' argument that their claim was rendered valueless because the Tribunal did not settle it is without merit. The 1985 judgment reflects that plaintiffs' Iranian judgment claim revived

after the Tribunal dismissed its proceedings. Plaintiffs' [sic] cannot now be heard to complain that they lack a forum for satisfaction of this claim.").

Prior to the Plaintiffs in this case, every takings claimant before this Court who did not have their claims "revived" in Federal Court received a merits hearing from a claims settlement tribunal or commission, or otherwise benefitted from the settlement itself.[14] *See e.g., Shanghai Power Co.*, 4 Cl. Ct. at 239 (plaintiff received $20 million from the Tribunal); *Belk*, 858 F.2d at 709 (plaintiff-hostages were released pursuant to Algiers Accords); *Sperry Corp.*, 439 U.S. at 52 (plaintiffs received $2.8 million settlement after filing with the Tribunal); *Marks*, 15 Cl. Ct. at612 -613 (plaintiffs' claim was revived in federal court); *Abrahim-Youri v. United States*, 139 F.3d 1462, 1468 (plaintiffs were compensated by the Tribunal but received no interest payments). In contrast here, the Defendant excluded Plaintiffs from the jurisdiction of the FCSC. DE 1 at ¶¶ 52-59. Accordingly, Defendants' invocation of previously unsuccessful takings cases, such as *Belk*, *Shanghai Power*, *Abrahim-Youri*, *Sperry*, and *Marks* instead supports Plaintiffs' argument that a compensable takings has taken place. *See* DE 11 at 9-17. Each of those opinions is sharply distinguished by the fact the fact that the plaintiffs in those cases received a benefit, i.e. were freed from captivity or were paid a portion of their initial claim by a tribunal or commission.

Four of the five factors weigh heavily in finding that Plaintiffs' claims were subject to a compensable taking. As the Federal Circuit explains, "[i]n determining whether a taking has occurred the court must weigh all of the relevant factors and decide whether compensation is

---

[14] With one exception: the plaintiffs in *Alliance of Descendants* received no merits hearing or settlement from Mexico (Mexico declined to pay years after entering into the claims settlement treaty), but the Federal Circuit did not determine whether a taking had occurred because the statute of limitations had run. *Alliance of Descendants of Tex. Land Grants v. United States*, 37 F.3d at 1482.

required by principles of justice and fair play." *Shanghai Power Co.,* 4 Cl. Ct. at 243. Justice and fair play should not permit the overwhelming majority of Libya claimants to benefit from either an alternate forum or remedy while a narrow class of claimants receive no compensation. Recall also that even a governmental act that "effectively serves a legitimate state interest" but that fails to "allocate" burden fairly among affected property holders, or that unjustly "singles out" a particular property holder is still a taking. *See Lingle v. Chevron U.S.A., Inc.*, 544, U.S. at 542-44.

Moreover, even if the Court finds that the three *Penn Central* factors, as cited by Defendant, DE 11 at 9, are the appropriate test to determine whether a compensable taking has occurred in this case, these factors also demonstrate that Defendant carried out a taking.

First, Defendant's argument that "plaintiffs could not have had an expectation to be able to sue Libya in the United States *at the time their claims accrued* because the State Sponsor of Terrorism exception did not exist then," DE 11 at 10 (emphasis added), ignores the facts that Plaintiffs invested in their causes of action well after the Terrorism Exception to the FSIA became law. Insurers buy and sell reinsurance contract rights and subrogated interests as a form of investment. *See e.g., Certain Underwriters at Lloyd's London*, 811 F. Supp. 2d at 65-67 (describing the process of reinsurance generally and specifically in regards to the aircraft hull for Egypt Air Flight 648). Plaintiffs, who held the reinsurance contracts before the Terrorism Exception to the FSIA was created, invested in these contracts by pursuing a cause of action against Libya in federal court *after the addition of the Terrorism Exception* rather than selling the contracts to another company for cents on the dollar. Thus, if the *Penn Central* factors applied, the relevant inquiry would be what were Plaintiffs' distinct investment backed expectations at their filing of the lawsuit against Libya, not at the time the claims against Libya accrued.

Plaintiffs cannot be said to have invested in their causes of action until choosing to pursue them with the expectation—in this case reasonable—of recovering their losses. *See American Heritage Dictionary* (2d College Ed. 1991) (defining "invest" as "to spend or utilize for future advantage or benefit"). One does not invest in being the victim of a terrorist attack, or any other tort, as one does not *choose* that misfortune, let alone "spend" or "utilize" resources for the privilege. *See id.* One invests in the cause of action by choosing to pursue it, rather than assigning it to another for a monetary consideration, or doing nothing.

In addition, while there was some remote possibility that Plaintiffs' claims might be subjected to a claims settlement process and therefore removed from federal court, DE 1 at 10-11 (citing *Republic of Iraq v. Beaty,* 556 U.S. 848 (2009), *Belk v. United States*, 12 Cl. Ct. 732, 734 (1987), *Dames & Moore,* 453 U.S. at 674 n.6 (1981), as discussed above, *see supra*, § II at 23-25, the removal of Plaintiffs' claims from federal court without provision of any alternative forum or remedy is without precedent. Based upon the Defendant's historical practice in analogous circumstances, as well as the Takings Clause of the Fifth Amendment, Plaintiffs had every reason to expect that they would receive an alternate remedy or forum when they invested in these causes of action against Libya.

Defendant argues that the *Beaty* decision stands against Plaintiffs' claim that a compensable takings took place. DE 11 at 11. The plaintiffs in *Beaty* were U.S. hostages of the former Iraqi regime who sued Iraq for torture under the Terrorism Exception to the FSIA. *Beaty*, 556 U.S. at 848. When the President "waived" the Terrorism Exception with regards to Iraq, the *Beaty* plaintiffs argued that the waiver did not apply retroactively, not that a taking had occurred. *Id*. at 863. However, it should be noted that when American victims of torture under the previous Iraqi regime *did* sue the United States for a taking before this Court, the United States

settled by espousing their claims and the plaintiffs voluntarily withdrew their action. *Acree v. United States*, 06-cv-798 (NBF), DE 36 (Fed. Cl. Aug. 04, 2011). In any event, *Beaty* is not a takings claim decision, and offers no useful precedent in this matter.

Even if Plaintiffs' "investment-backed expectations" could be considered "greatly reduced in a highly regulated field" as Defendant suggests in its citation to *Branch ex. rel. Maine Nat'l. Bank v. United States*, 69 F.3d 1571, 1581 (Fed. Cir. 1995), DE 11 at 10, this is not a dispositive factor. The Federal Circuit does not have a bright line "highly regulated" rule that precludes finding a taking: "[t]he Federal Circuit could have applied a blanket rule relating to heavy regulation, but did not." *Maritrans Inc. v. United States*, 40 Fed. Cl. 790, 800 (Fed. Cl. 1998), *affirmed in part, reversed on other* grounds, *Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003). Even if such a rule existed, which it does not, *Branch* limits its holding to the "rules governing the liability of national banks". *Branch*, 69 F.3d at 1582 ("Banking is one of the longest regulated and most closely supervised of public callings." (quoting *Fahey v. Mallonee*, 332 U.S. 245, 250 (1947))).

The plaintiffs in *Chang*, cited by Defendants alongside *Branch*, were petroleum engineers whose contracts with a Libyan oil company were terminated under economic sanctions imposed by President Reagan. 859 F.2d at 893-94. The Federal Circuit held that the *Chang* plaintiffs did not have a distinct investment-backed expectation in those contracts as they were "contingent upon the continuation of friendly relations between nations" at a time that Libya was violently antagonistic towards the United States. *Id.* at 897-98. As opposed to the plaintiffs in *Chang*, Plaintiffs' involvement with Libya, and attendant regulation by the United States, has been purely involuntary. Plaintiffs did not choose to have Pan Am 103 bombed or Egypt Air Flight 648 hijacked. Furthermore, *Chang* did not deny those plaintiffs' takings claims based solely on

the weighing of this first factor against them, the second factor also weighed heavily against them.

The second factor, "the character of the governmental action factor" also weighs in favor of finding that a taking occurred. This factor requires the Court to analyze the burdens imposed on Plaintiffs to ensure that they "are not so wholly disproportionate to the burdens other individuals face in a highly regulated society that some people are being forced 'alone to bear public burdens which, in all fairness and justice, must be borne by the public as a whole. . . .'" *Maritrans* v. United States, 342 F. 3d at 1357 (quoting *United States v. Locke,* 471 U.S. 84, 107 n.15 (1985)). In this case, Plaintiffs alone among the dozens of Libya claimants had their causes of action extinguished without an alternative remedy or hearing being provided. The complete extinguishment of Plaintiffs' property meets the Supreme Court's definition of a *per* se taking as it was a "regulatory action" that "completely deprive an owner of '*all* economically beneficial us[e]' of her property." *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (citing *Lucas,* 505 U.S., at 1019). In *Chang* the federal Circuit found that the "character of governmental action" was not a taking because Plaintiffs were still able to utilize their property interest elsewhere: "the government's actions only prevented the plaintiffs from marketing their services in Libya, and their complaint contains no allegation that they were blocked from marketing their services elsewhere." 859 F.2d at 896. In contrast, there is no question in this case that Plaintiffs' property interest in their causes of action have been utterly eradicated by the Defendant's exercise of public power.

Defendant argues at great length that when the "nature of the government action" is foreign relations, the United States' "authority and discretion to act" is at its highest. DE 11 at 13-16. Plaintiffs do not dispute the legality of the President's exercise of foreign policy powers.

*See supra*, § II at 29-30. The proper exercise of public power is required as a predicate for a takings claim: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend V.

Nor do Plaintiffs request that this Court conduct any sort of inquiry into the President's decision to sign the Claims Settlement Agreement, or into the terms of that agreement. *See supra*, § II at 29-30. For similar reasons, Defendant's discussion of alteration of procedural and jurisdictional rules, DE 11 at 15, is equally irrelevant. Plaintiffs do not allege that a taking occurred when Defendant removed jurisdiction over Plaintiffs' claims from federal courts, but that Defendant's unprecedented failure to provide any form of alternative remedy or forum for Plaintiffs was a taking.

Third, Defendant argues that the economic impact of the Government's actions is insufficient to give rise to a taking. DE 11 at 16 (citing *In re Jones Truck Lines, Inc.*, 57 F.3d 642, 651 (8th Cir. 1995)). The Eighth Circuit in *Jones* referred to the economic impact in an extinguished cause of action as "somewhat speculative" and expressed concerns that the particular causes of action in *Jones* were vulnerable to counterclaim. *In re Jones Truck Lines, Inc.*, 57 F.3d at 651. In contrast, Plaintiffs' claims were all but guaranteed to reach a final judgment.

Libya did not dispute its liability for the bombing of Pan Am Flight 103, *Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya*, 2007 WL 1876392 at *9, and its liability for the hijacking of the Egypt Air Flight 648 is a matter of public record. DE 1 at ¶ 16. In addition, Plaintiffs obtained a final judgment against the government of Syria, Libya's co-conspirator in the Egypt Air attack, to compensate them for their payments made to the owners of the aircraft. *Certain Underwriters at Lloyd's London v. Socialist People's Libyan Arab*

*Jamahiriya*, 811 F. Supp. at 53. Plaintiffs' causes of action were hardly "inchoate", as asserted by Defendant. DE 11 at 16.

Defendant also argues that even had Plaintiffs received a final judgment, there was no guarantee they could have enforced it. DE 11 at 16 (citing *Sperry v. United States*, 493 U.S. 52, 63 (1989)). Here, Defendant simply ignores the growing evidence of the upsurge in successful enforcement actions on behalf of victims of terrorism under the FSIA in the United States since the passage of amendments to the FSIA in 2008. Other FSIA Terrorism Exception plaintiffs have collected hundreds of millions of dollars through enforcement actions across the United States. *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 758 F.3d 185, 188 (2d Cir 2014) (confirming the turnover of $1.75 billion in Iranian funds to Terrorism Exception plaintiffs); *Gates v. Syrian Arab Republic*, No. Civ. 11-8715, 2013 WL 1337223 at *2, *11 (N.D. Ill. Mar. 29, 2013) (authorizing the turnover of nearly $80 million dollar in Syrian assets to Terrorism Exception plaintiffs); *Heiser v. Islamic Republic of Iran*, 807 F. Supp. 2d 9, 12 (D.D.C. 2011) (in a successful garnishment action, directing "Sprint Communications Company LP ("Sprint") to turn over funds it owes to" an Iranian entity in satisfaction of a Terrorism Exception judgment); *Rux v. ABN-Amro Bank, N.V.*, 08 Civ. 6588 (AKH) 2009 U.S. Dist. LEXIS 132179 at *6 (S.D.N.Y. Apr. 14, 2009) (ordering the turnover of Sudanese funds sufficient to satisfy the entire judgment of Terrorism Exception plaintiffs).

Even if, contrary to Federal Circuit precedent, the *Penn Central* factors were the applicable test in this case, Plaintiffs have shown a strong investment-backed expectation in an alternate remedy or forum, have shown an arbitrary, domestic government action, and have shown a complete and irreversible economic impact as a result of the Defendant's taking.

## III. <u>The Political Question Doctrine Does Not Apply As Plaintiffs' Takings Claims Do Not Implicate the President's Foreign Policy Powers</u>

Defendant incorrectly asserts that Plaintiffs wish to "second-guess the President's authority to settle plaintiffs' claims". DE 11 at 17. Defendant also states that "[t]he President's authority for the Claims Settlement Agreement and the extinguishment of plaintiffs' claims is beyond question", as though Plaintiffs would disagree. *Id.* In fact, they do not. The President undoubtedly has the power to conduct foreign relations and enter into settlement agreements such as the one involved in this case. The fact that the President had the *authority* to suspend Plaintiffs' claims creates a claim for compensation before this Court. *See e.g.*, *Dames & Moore v. Regan*, 453 U.S. 654, 688-89 (1981) ("[W]e are not prepared to say that the President lacks the power to settle such claims . . . [However], the possibility that the President's actions may effect a taking of petitioner's property, make ripe for adjudication the question whether petitioner will have a remedy at law in the Court of Claims under the Tucker Act.") (citations omitted).

The President exercised those powers when negotiating the U.S.-Libya Claims Settlement Agreement, in which both countries agreed that the United States would receive $1.5 billion dollars to settle espoused claims in exchange for "terminat[ing] permanently" all pending terrorism suits against Libya. *Claims Settlement Agreement Between the United States of America and the Great Socialist People's Libyan Arab Jamahiriya*, 2008 U.S.T. Lexis 72, entered into force Aug. 14, 2008 (hereinafter "CSA"). Once the funds were paid to the United States, the Administration had to decide how it should be apportioned among the claimants whose causes of action against Libya had been terminated. To this end, by letters dated December 11, 2008 and January 15, 2009, the U.S. State Department referred terminated claims of "United States nationals" against Libya to the FCSC for "fair compensation."); Letter from the Honorable John B. Bellinger, III, Legal Adviser, Department of State, to the Honorable Mauricio

J. Tamargo, Chairman, FCSC (December 11, 2008); Letter from the Honorable John B. Bellinger, III, Legal Adviser, Department of State, to the Honorable Mauricio J. Tamargo, Chairman, FCSC (Jan. 15, 2009).

The Commission found that they did not have jurisdiction over Plaintiffs' claims under the terms of these referral letters. *See e.g., Claim of New York Marine and General Insurance Co.*, Claim No. LIB-II-170, Decision No. LIB-II-165, at 7-8 (FCSC 2012) (Feb 15, 2013, Final Decision) (finding that a U.S. insurance company was not a "United States national" for purposes of the referral letters)[15]; *Claim of Subrogated Interest to Pan American World Airways, Inc.*, Claim No. LIB-II-171, Decision No. LIB-II-161, at 14-15 (2013) (Final Decision) (finding no jurisdiction over the subrogated claims of a U.S. airline because it was held by foreign insurers).

The taking carried out by Defendant occurred not when it extinguished Plaintiffs' lawsuits, but when it decided to exclude their claims from the FCSC's jurisdiction. Thus, Plaintiffs are not asking this Court to conduct a "judicial inquiry into whether the President could have extracted a more generous settlement from another country," but rather an inquiry into the domestic process by which Plaintiffs were excluded from the jurisdiction of the FCSC. *See* DE 11 at 17-18 (citing *Shanghai Power Co. v. United States,* 4 Cl. Ct. at 248-49). While allowing Plaintiffs to participate in the pro-rata[16] apportionment of settlement funds might have diminished the awards of other claimants, it would not have required the President to extract more money from Libya.

---

[15] Available at http://www.justice.gov/sites/default/files/fcsc/docs/lib-ii-170.pdf.
[16] *See* 22 U.S.C. § 1627(e); *see also Unpaid Foreign Claims*, U.S. Department of Treasury, http://www.fiscal.treasury.gov/fsservices/gov/pmt/unpdforclaims/libya_claims.htm (last visited on Jan. 21, 2015).

Plaintiffs do not allege that their share of the settlement was too small because the pool of funds was insufficient. Rather, Plaintiffs' claims were taken because they were never afforded an opportunity to present those claims to a portion of that pool before a tribunal of competent jurisdiction. DE 1 at ¶¶ 52-59. Plaintiffs have no interest in "probing into the thought-processes of our negotiators, perhaps even of the President, to establish what they had in mind when they struck the deal," *see id.*, because "the deal" was a *fait accompli* at the time of the taking.

## CONCLUSION

Despite Federal Circuit authority to the contrary, Defendant's argument that Plaintiffs' extinguished claims are not a cognizable property interest under the Fifth Amendment focuses on the procedural posture of Plaintiffs' extinguished claims, rather than the "legally-recognized property interest" that they protected. *See supra*, § I.

Defendant also mistakenly argues that no compensable taking took place based on the three *Penn Central* regulatory takings factors, which the Federal Circuit has explicitly declined to follow in cases such as this. No matter which factors are applied to answer this question, justice and fair play should not countenance that a narrow class of claimants should receive no compensation while the overwhelming majority of other Libya claimants benefited from either an alternate forum or remedy. *See supra*, § II.

Lastly, Defendant fixates on the foreign policy powers of the Executive, which Plaintiffs do not challenge. *See supra*, § III.

For the above reasons, this Court should deny Defendant's Motion to Dismiss.

January 22, 2015

Respectfully submitted,

/s/ Steven R. Perles

Steven R. Perles
Edward MacAllister
PERLES LAW FIRM, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax: 202-955-3806
Email: sperles@perleslaw.com

Attorneys for Plaintiffs