No. 14-687C
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

AVIATION & GENERAL
INSURANCE COMPANY, LTD., *et al.*,

Plaintiffs,

v.

UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

---

BENJAMIN C. MIZER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

REGINALD T. BLADES, JR.
Assistant Director

L. MISHA PREHEIM
Senior Trial Counsel
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-3087
Facsimile: (202) 514-8640
misha.preheim@usdoj.gov

March 11, 2015

Attorneys for Defendant

# TABLE OF CONTENTS

**PAGE**


DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS ..... 1

ARGUMENT ..... 2

I. Plaintiffs Have Not Identified Any Cognizable Property Interest Upon Which To Base Their Taking Claim ..... 2

A. Plaintiffs Do Not Possess A Cognizable Property Interest In Pursuing Their Claims At The Foreign Claims Settlement Commission ..... 2

B. Plaintiffs' Claims Are Not Vested Property ..... 5

C. The Case Law Cited By Plaintiffs Is Not Helpful To Their Case ..... 8

II. If Plaintiffs Were To Possess A Cognizable Property Interest, The *Penn Central* Factors Would Be Relevant To The Question Of Whether A Taking Has Occurred ..... 12

III. The Factors Relied Upon By Plaintiffs Demonstrate That No Taking Occurred ..... 18

IV. This Case Presents A Non-Justiciable Political Question ..... 20

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*767 Third Avenue Associates v. United States*,
48 F.3d 1575 (Fed. Cir. 1995)........ 13

*Abrahim-Youri v. United States*,
139 F.3d 1462 (Fed. Cir. 1997)........ passim

*Abrahim-Youri v. United States*,
36 Fed. Cl. 482 (1996)........ 12

*Adams v. United States*,
391 F.3d 1212 (Fed. Cir. 2004)........ 3, 5, 10

*Alliance of Descendants of Tex. Land Grants v. United States*,
37 F. 3d 1478 (Fed. Cir. 1994)........ 8

*American & European Agencies v. Gillilland*,
247 F.2d 95 (D.C. Cir. 1957)........ 3

*Arbour v. Jenkins*,
903 F.2d 416 (6th Cir. 1990)........ 6

*Belk v. United States*,
12 Cl. Ct. 732 (1987)........ 20

*Belk v. United States*,
858 F.2d 706 (Fed. Cir. 1988)........ 15, 17, 18

*Bowers v. Whitman*,
671 F.3d 905 (9th Cir. 2012)........ 7

*Branch ex. rel. Maine Nat'l Bank v. United States*,
69 F.3d 1571 (Fed. Cir. 1995)........ 2, 4, 11

*Commonwealth Edison Co. v. United States*,
271 F.3d 1327 (Fed. Cir. 2001)........ 6

*Connolly v. Pension Benefit Guaranty Corp.*,
475 U.S. 211 (1986)........ 3

*Consolidated U.S. Atmospheric Testing Litigation*,
820 F.2d 982 (9th Cir. 1987)........ 11

*Dames & Moore v. Regan*,
453 U.S. 654 (1981)........................................................................................ 13, 15

*Fla. Rock Indus., Inc. v. United States*,
791 F.2d 893 (Fed. Cir. 1986)........................................................................................ 7

*Good v. United States*,
189 F.3d 1355 (Fed. Cir. 1999)........................................................................................ 16

*Hammond v. United States*,
786 F.2d 8 (1st Cir. 1986)........................................................................................ 6

*In re TMI*,
89 F.3d 1106 (3d Cir. 1996)........................................................................................ 6

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994)........................................................................................ 3, 7

*Lucas v. South Carolina Coastal Counsel*,
505 U.S. 1003 (1992)........................................................................................ 16

*Republic of Iraq v. Beaty*,
556 U.S. 848 (2009)........................................................................................ 3, 6, 14

*Rogers v. Tristar Prods., Inc.*,
559 Fed. App'x. 1042 (Fed. Cir. 2004)........................................................................................ 9

*Salmon v. Schwarz*,
948 F.2d 1131 (10th Cir. 1991)........................................................................................ 6

*Shinnecock Indian Nation v. United States*,
112 Fed.Cl. 369 (2013)........................................................................................ 7, 11

*United States v. Pink*,
315 U.S. 203 (1942)........................................................................................ 15, 19

**STATUTES**

22 U.S.C. § 1623 .......... 4, 20

28 U.S.C. § 1491 .......... 8

28 U.S.C. § 1605 .......... 12

41 U.S.C. § 601 .......... 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AVIATION & GENERAL INSURANCE COMPANY, LTD., *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 14-687C (Judge Wheeler) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

Pursuant to Rule 12(b)(6) of this Court's Rules, defendant, the United States, respectfully submits this reply in support of our motion to dismiss. In our motion, we demonstrated that the complaint fails to state a claim upon which relief can be granted. Specifically, plaintiffs do not possess a valid property interest upon which to base their takings claim; and even if they did, restoration of jurisdictional immunity to Libya cannot be considered a "taking" of that interest. Plaintiffs' suit also invokes non-justiciable political questions.

In response, plaintiffs contend that they have a cognizable property interest in their claims against Libya. Plaintiffs also assert that the *Penn Central* factors are the wrong analytical framework to apply and that under the proper framework, the Government has effected a taking of their claims. Finally, plaintiffs contend that this case is justiciable because plaintiffs are not contesting the extinguishment of their lawsuit or the settlement agreement with Libya but, rather, the decision to exclude their claims from the Foreign Claims Settlement Commission's jurisdiction.

As explained below, plaintiffs are incorrect. Plaintiffs now assert that the taking occurred not when the United States removed jurisdiction over plaintiffs' claims in Federal courts, but when the Government failed to provide an alternative remedy or forum for plaintiffs. But

plaintiffs do not possess any property interest in an alternative remedy or forum. The failure to provide something that plaintiffs never possessed or had any right to is not a taking. Regardless, plaintiffs' claims against Libya, which were tort claims based upon Federal statutes, are not cognizable property. Even assuming that plaintiffs possess a vested property interest, plaintiffs' case should be dismissed under the *Penn Central* factors. The Federal Circuit has rejected the argument that these factors are irrelevant to a case like this. These factors make clear that no taking occurred. Finally, this case is not justiciable. An inquiry into plaintiffs' dissatisfaction with the settlement would impermissibly go to the heart of the President's ability to carry out foreign relations.

## ARGUMENT

### I. Plaintiffs Have Not Identified Any Cognizable Property Interest Upon Which To Base Their Taking Claim

#### A. Plaintiffs Do Not Possess A Cognizable Property Interest In Pursuing Their Claims At The Foreign Claims Settlement Commission

In our motion, we explained that plaintiffs' claim against Libya is not a cognizable property interest under the Takings Clause. In response, plaintiffs first contend that whether property rights are protected by the Takings Clause depends on the private property underlying the cause of action, not the procedural posture of the cause of action at the time of the taking.

As an initial matter, plaintiffs fail to recognize that, even assuming that they possess a property interest in their claims, the Government did not take any of plaintiffs' claims. Plaintiffs are required to "pinpoint what step in the sequence of events . . . constituted conduct that the government could not engage in without paying compensation." *Branch ex. rel. Maine Nat'l Bank v. United States*, 69 F.3d 1571, 1575 (Fed. Cir. 1995). Plaintiffs assert that the alleged taking occurred as a result of the exclusion of their claims from the jurisdiction of the Foreign

Claims Settlement Commission. Pls' Opp. at 38 ("The taking carried out by Defendant occurred not when it extinguished Plaintiffs' lawsuits, but when it decided to exclude their claims from the FCSC's jurisdiction."); *see also id.* at 35 (same). Even assuming that plaintiffs have a property interest in their claims against Libya (they do not), plaintiffs have no property interest in the Commission's jurisdictional rules. Indeed, plaintiffs do not possess any right to have their claims submitted to the Commission.

As we explained in our motion, even with respect to the jurisdictional rules of Article III Courts, the Supreme Court recognizes in *Beaty* that the alteration of those rules does not take away any of plaintiffs' substantive rights. *Republic of Iraq v. Beaty*, 556 U.S. 848, 865 (2009). *See also Landgraf v. USI Film Products*, 511 U.S. 244, 274 (1994) ("Application of a new jurisdictional rule usually takes away no substantive right. . . ." (citation and quotation marks omitted)). Thus, at most, plaintiffs assert a property interest in a jurisdictional rule – the Commission's jurisdictional rules. That is not a cognizable property interest. *See American & European Agencies v. Gillilland*, 247 F.2d 95, 97-98 (D.C. Cir. 1957) ("The Foreign Claims Settlement Commission . . . has the duty of distributing a governmentally created fund among a class. No claimant, including the appellant, has a right to participate in any amount until the Commission has made an award."); *cf. Adams v. United States,* 391 F.3d 1212, 1225-26 (Fed. Cir. 2004) (plaintiffs do not possess a cognizable property interest in a claim before an administrative agency).

Further, plaintiffs cite to no law, rule, or regulation, that requires that their claims be heard by the Commission. That is, plaintiffs cite no law, rule or regulation that was altered or "taken" by the Government. Thus, the fact that the Commission did not possess jurisdiction over their claims was not a taking of any property from plaintiffs. *See Connolly v. Pension Benefit*

*Guaranty Corp.*, 475 U.S. 211, 224 (1986) (holding that there can be no compensation under the Takings Clause if "the United States has taken nothing for its own use").

Plaintiffs assert that the "State Department *created* the jurisdiction of the FCSC through the issuance of two referral letters . . . both of which excluded Plaintiffs from the FCSC's jurisdiction." Pls' Opp. at 5. Regardless of the accuracy of that allegation, it shows that plaintiffs' complaint is not with any affirmative action of the Government, but with exclusion of their claims from the Commission's jurisdiction. This is not even a change in the law – which itself would be insufficient to support a takings claim.[1] *Branch*, 69 F.3d at 1577-78 ("a legislature is free to make statutory changes in the common law rules of liability without running afoul of the Fifth or Fourteenth Amendment protections of property. The reason, the Supreme Court has explained, is that no one is considered to have a property interest in a rule of law.").

In any event, the Commission *did* hear certain plaintiffs' claims. The Commission's decision on those claims makes clear that the Commission in fact considered the claims but concluded that the claims were not within its jurisdiction for a number of reasons related to a failure of proof on the part of the claimants and to long-standing requirements of the Commission. Lib-II-161, at 11, available at http://www.justice.gov/sites/default/files/fcsc/docs/lib-ii-171.pdf. First, the Commission found that the claimants had not provided the accounting necessary to establish their ownership of the claim. Second, the claimants relied heavily upon their district court case. The Commission, however, concluded that "[w]hile the District Court did rule that Libya was responsible for the bombing, the claimants were never able to convince the court that there was a viable legal theory

[1] Plaintiffs' view would also allow parties to circumvent the fact that decisions of the Commission are not subject to judicial review simply by asserting a takings claim. 22 U.S.C. § 1623(h).

under which they would in fact prevail. In short, at no point did any court rule that claimants had a valid cause of action or that claimants were entitled to damages, and there is no evidence that a court ever would have." *Id.* at 10. Third, and finally, relying upon the long-standing "continuous nationality rule," the Commission concluded that the claimants had failed to establish that the claim was owned by United States nationals continuously from the date of the injury to the date of the Claims Settlement Agreement. *Id.* at 11. That plaintiffs did not like the Commission's decision on these claims is not a cognizable property interest. If it were, then a taking would occur any time a court concluded that it lacked jurisdiction over a party's claims.

B. Plaintiffs' Claims Are Not Vested Property

Even assuming that the Government effected a taking of plaintiffs' claims, rather than, at most, a failure to provide plaintiffs access to the Commission, plaintiffs' assertion that they possess cognizable claims because of the nature of their underlying causes of action is incorrect.

In response to the myriad cases we cited in our motion, plaintiffs rely heavily on dicta from the Federal Circuit's *Adams* case. To the extent that the Federal Circuit has viewed a claim as property, this view is limited to claims to recover compensation for an interest in land or other similar claim. *See Adams* 391 F. 3d at 1225-26. In contrast, plaintiffs' claims in the district court litigation were tort claims based upon Federal statutes. *See* Dkt. No. 60, Second Amended Compl. in Case No. 06-731 (D.D.C.).

Plaintiffs assert that their claims protected a "legally-recognized property interest," including insurance contracts and real property and that those interests are, therefore, cognizable property under the takings clause. Pls' Opp. at 14. Specifically, plaintiffs assert that their interest in the hull of the aircraft and subrogated insurance contract are property. *Id.* Plaintiffs

point out that the Federal Circuit has held that tangible property – like a fishing vessel – is considered property under the Takings Clause. *Id.*

Plaintiffs fail to recognize that the Government has not taken any tangible property from plaintiffs, such as the aircraft hull. And the lawsuits that they brought against Libya were not suits to enforce insurance contracts or any other contracts with Libya. They were tort claims, brought under Federal statutes, based upon Libya's acts of terrorism. Plaintiffs do not cite any case law from the Federal Circuit holding that tort claims are property under the Takings Clause. Not surprisingly, other circuits have concluded that tort claims are not vested rights. *Hammond v. United States*, 786 F.2d 8, 12-13, 15 (1st Cir. 1986) ("Congress abridged no vested rights . . . by . . . retroactively abolishing [plaintiff's] cause of action in tort;" dicta that valid taking claim also "very unlikely"); *In re TMI*, 89 F.3d 1106, 1113 (3d Cir. 1996) ("a pending tort claim does not constitute a vested right"); *Salmon v. Schwarz*, 948 F.2d 1131, 1143 (10th Cir. 1991) (a tort claim "affords no definite or enforceable property right until reduced to final judgment." (citations and internal quotation marks omitted)); *Arbour v. Jenkins*, 903 F.2d 416, 420 (6th Cir. 1990) (same).[2] Thus, just because a tort claim may be considered property in some states does not mean that it is vested property that is protected under the Takings Clause.

Indeed, given that tort claims are inherently speculative, the lack of certainty in any recovery would preclude viewing these claims as cognizable property, particularly in light of the foreign relations context of those claims. *Beaty*, 556 U.S. at 865 ("[t]he President's elimination of Iraq's later subjection to suit could hardly have deprived respondents of any expectation they held at the time of their injury that they would be able to sue Iraq in United States courts."); *cf. Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1340 (Fed. Cir. 2001) (explaining

---

[2] As noted in our motion, even a final judgment may not be a cognizable property interest under the Takings Clause. Mot. to Dismiss, at 8.

that even with respect to money, for a taking to occur the money must be "specific."); *see also Bowers v. Whitman*, 671 F.3d 905, 913 (9th Cir. 2012) ("the relevant inquiry is the certainty of one's expectation in the property interest at issue. . . if the property interest is 'contingent and uncertain' or the receipt of the interest is 'speculative' or 'discretionary,' then the government's modification or removal of the interest will not constitute a constitutional taking."). Here, as we established in our motion, the viability of plaintiffs' claims against Libya was never even established. The same is true with respect to plaintiffs' alleged contractual interest. *Fla. Rock Indus., Inc. v. United States*, 791 F.2d 893, 903 (Fed. Cir. 1986) ("Yet frustration in performance of even an existing contract is not a taking of contract rights . . .") (citation omitted).

As this Court recently explained, the reason a cause of action is not vested property under the Takings Clause "is because, until a final unreviewable judgment has been entered, the cause of action 'is inchoate and does not provide a certain expectation in that property interest.'" *Shinnecock Indian Nation v. United States*, 112 Fed.Cl. 369, 384 (2013) (quoting *Bowers*, 671 F.3d at 914). In *Shinnecock Indian Nation*, this Court denied a motion for leave to amend a complaint based on the Government's alleged taking of their claims. 112 Fed. Cl. at 382. The Court explained that "[t]he "Takings Clause prevents the Legislature (and other government actors) from depriving private persons of *vested* property rights except for a 'public use' and upon payment of 'just compensation.'" *Id.* (quoting *Landgraf*, 511 U.S. at 266). The Court concluded that, for purposes of the Takings Clause, no vested right in a cause of action attaches until there is a final, unreviewable judgment. *Id.* This is precisely the situation in this case.

Moreover, under plaintiffs' view, any claim based, even tangentially, upon a contract or personal property would be a cognizable property interest. If that were true, then rules relating to contracts – such as the Tucker Act's statute of limitations, could never be changed without

effecting a taking. Similarly, plaintiffs' interpretation of what constitutes property under the Takings Clause is so broad that virtually any claim within this Court's jurisdiction under the Tucker Act, 28 U.S.C. § 1491, could be refashioned as a takings claim, and prerequisites applicable to a wide range of non-constitutional Tucker Act suits could be circumvented. For example, under plaintiffs' reasoning, when a contracting officer denies a contractor's claim for money alleged to be due under a procurement contract, the contractor would be able to sue the Government within six years of the contracting officer's decision, without regard to the provisions of the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, simply by pleading that the denial of the claim constituted a taking.

C. The Case Law Cited By Plaintiffs Is Not Helpful To Their Case

Plaintiffs rely on three cases that they argue support that they possessed a vested property interest. The first case cited by plaintiffs – *Alliance of Descendants of Texas Land Grants v. United States*, 37 F. 3d 1478, 1481 (Fed. Cir. 1994) – is readily distinguishable because it involved land. One need not stretch the common understanding of the word "property" to view the right to sue for compensation for the loss of land as an incident of ownership of the land itself. *Alliance* stands for nothing more remarkable than that.

In *Abrahim-Youri v. United States*, 139 F.3d 1462 (Fed. Cir. 1997), cert. denied, 524 U.S. 951, reh'g denied, 524 U.S. 970 (1998), a case we cited in our motion, the Federal Circuit *rejected* a takings claim predicated upon the Government's espousal and settlement of claims against Iran. The court stated: "We agree with plaintiffs that their property rights - their choses in action against Iran - were extinguished when the Government espoused and settled their claims." *Id.* at 1465. Of course in this case, plaintiffs' claims were not espoused by the Government – rather, Congress reinstated Libya's sovereign immunity. Further, the Court did

not discuss the nature of the underlying interests that were the subject of the claims involved, nor did it specifically address whether the referenced "choses in action" constituted property within the meaning of the Takings Clause. Nor is it clear whether the court was agreeing with the plaintiffs' characterization of the choses in action as property, or merely agreeing that what the plaintiffs had identified as property rights were extinguished. In any event, because the court held that the Government's actions did not constitute a compensable taking, the quoted statement is at most only dictum.

Similarly, *Shanghai Power* is not helpful to plaintiffs' argument. In that case, the Claims Court held that no taking occurred when the United States espoused and settled the claims of United States nationals against China. 4 Cl. Ct. 237, 239-40 (1983). In so holding, the Court emphasized that the plaintiffs could not have had a reasonable expectation of recovery given the foreign relations aspects of the case and the inherent authority of the President to espouse and settle claims. *Id.* at 245. ("The rights of nationals trading or traveling abroad are bound up in another, perhaps more fundamental, aspect of a nation's foreign relations."). The Court also concluded that the case was not justiciable, because a "judicial inquiry into whether the President could have extracted a more generous settlement from another country would seriously interfere with his ability to carry on diplomatic relations." *Id.* at 248.

Plaintiffs next contend that the cases we cite from the Federal Circuit do not support our argument. Plaintiffs assert that two of the three cited cases do not even involve takings claims. Plaintiffs are incorrect. In addition to *Adams*, which plaintiffs recognize involved takings law, *Rogers* also involved a takings claim. *See Rogers v. Tristar Prods., Inc.*, 559 Fed. Appx. 1042, 1045 (Fed. Cir. 2004) (non-precedential) ("Rogers urges us to hold that the Takings Clause prohibits such a result in this case on the assertion that by initiating the lawsuit it has become

property. In fact, however, no 'vested' right attaches until there is a final, unreviewable judgment, so it is of no moment that Rogers expended effort and resources in filing and pursuing the complaint."). In denying the taking claim, the Court explained that "Congress can change the rules in the middle of the suit . . . *or even eliminate the cause of action entirely after the case has been filed*." *Id.* at 1044-45 (citations omitted) (emphasis added).

Plaintiffs next assert that the other case we cited – *Adams v. United States*, 391 F. 3d 1212, 1225-26 (Fed. Cir. 2004) – actually supports that plaintiffs possess a valid property interest. In *Adams*, the Federal Circuit stated that *Alliance of Descendants* recognized a property interest in a cause of action to "recover compensation for an interest in land," but held that there was no cognizable property interest in a claim before an administrative agency. The Court then indicated, in *dicta*, that claims that concern a "legally recognized property interest" may, under certain circumstances, be cognizable under the Fifth Amendment. *Adams*, 391 F.3d at 1225-26. This holding supports our argument. First, plaintiffs assert that the taking occurred when the United States precluded them from bringing claims before the Commission. That is not a valid property interest even under the dicta from *Adams* – plaintiffs' alleged interest is not even an administrative claim based upon a Federal statute, which is not a property interest. Second, as explained above, to decide whether a claim may be property, some courts have looked to whether the claim is specific, something plaintiffs cannot demonstrate.

Plaintiffs' effort to distinguish the cases we cite from other circuits is similarly unavailing. As an initial matter, plaintiffs attack a number of the cases because they involve the due process clause, rather than the takings clause, and thus "have no bearing on this Court's Takings Clause analysis." Pls. Opp. at 17 n.8. As explained in our motion, courts have generally held that a *lack* of a property interest for due process purposes will also mean a lack of

a property interest for takings purposes; the courts have not found, however, that recognized property for due process purposes is necessarily vested property for takings purposes. For example, this Court, in rejecting a takings claim under similar circumstances, concluded that, "for purposes of the Takings Clause, no 'vested' right [in a cause of action] attaches until there is a final, unreviewable judgment" and noted that "[t]he same is true in the context of the Due Process Clause." *Shinnecock*, 112 Fed.Cl. at 384 (citations omitted). And, as the Federal Circuit explains, "the Supreme Court has regarded the Takings Clause as a first cousin of the doctrine of substantive due process and has given broad scope to legislative prerogatives to modify legal rules without having to compensate affected parties for the costs resulting from the changes." *Branch*, 69 F.3d at 1578. Similarly, the Ninth Circuit concludes that, "[a] cause of action does not afford the holder the traditional bundle of rights associated with the ownership of property. Instead, it represents a right to assert a claim for compensation or some other form of judicial relief. Its value is contingent on successful prosecution to judgment. Thus, to the extent it is entitled to due process protection, that protection focuses on assuring access to fair procedures for its prosecution. The notion of due process relevant to causes of action is that 'deprivation . . . by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *In re Consolidated U.S. Atmospheric Testing Litigation*, 820 F.2d 982, 989-90 (9th Cir. 1987) (citations omitted).

Plaintiffs next contend that certain of the cases that we cite are irrelevant because they involve "entitlements created by federal statute that were later revoked." Pls' Opp. at 19. Plaintiffs fail to recognize that the claims that they asserted in district court were brought pursuant to a Federal statute (that was later revoked, in relevant part). This is true in two respects. First, plaintiffs could not pursue any claim against Libya in United States courts until

Libya's sovereign immunity was revoked. Second, after their initial complaint was dismissed by the district court, plaintiffs sought to amend their complaint to bring claims pursuant to 28 U.S.C. § 1605A(d). *See* Dkt. No. 60, Second Amended Compl. in Case No. 06-731 (D.D.C.); *see also* Pls' Opp. at 27 (asserting that the district court "issued a judgment [against Syria] under 28 U.S.C. § 1605A(d) in favor of [certain] Plaintiffs"). This was a statutorily-created remedy that became inapplicable through the reinstatement of Libya's sovereign immunity. Thus, the distinction made by plaintiffs does not exist in this case.

## II. If Plaintiffs Were To Possess A Cognizable Property Interest, The *Penn Central* Factors Would Be Relevant To The Question Of Whether A Taking Has Occurred

Plaintiffs next contend that the *Penn Central* analysis is "the wrong analytical framework." Pl's. Opp. at 24. As an initial matter, the case they cite – *Abrahim-Youri* – involved the espousal of claims by the United States. Here, however, the United States has not espoused plaintiffs' claims. At most, the United States has prevented plaintiffs' from pursuing their claims through modification of a jurisdictional rule. Thus, this case is far from a *per se* taking and falls under the regulatory takings analysis.

In any event, *Abrahim-Youri* supports that *Penn Central* applies. *Abrahim-Youri v. United States*, 139 F. 3d 1462 (Fed. Cir. 1997). In that case, plaintiffs filed a suit for an alleged taking when the United States espoused and settled their claims against Iran. This Court applied the *Penn Central* factors and concluded that no taking had occurred. *Abrahim-Youri v. United States*, 36 Fed. Cl. 482 (1996). On appeal, the plaintiffs contended that "the *Penn Central* type analysis is wholly inapplicable" because "the Government effected a "per se taking of their property (i.e. their causes of action against Iran) by espousing and settling their claims . . . and the Court of Federal Claims therefore erred in applying the three-factor *Penn Central* analysis which applies to regulatory takings, not to 'per se' takings." *Abrahim-Youri*, 139 F. 3d at 1465.

The court recognized that the case did not fit comfortably in the regulatory taking category and nonetheless concluded that, "[t]o say that, however, does not say that plaintiffs' syllogism necessarily follows, or that the considerations identified by the trial court are not relevant to the proper outcome in this case." *Id.* at 1466. The court then discussed the plaintiffs' reasonable expectations, the character of the Government's conduct, and the economic impact on the claimants, thus making clear that the *Penn Central* factors are relevant. *Id.* at 1466-68. The Court concluded that no taking had occurred because "those who engage in international commerce must be aware that international relations sometimes become strained, and that governments engage in a variety of activities designed to maintain a degree of international amity." *Id.* at 1468.

Accordingly, if the plaintiffs were to possess a cognizable property interest, the *Penn Central* factors would be relevant to determining whether a taking occurred. As we explained, plaintiffs could not have had a reasonable expectation of being able to sue Libya at the time their claim arose, not only because Libya possessed sovereign immunity at that time, but also in light of the President's broad and historic power to espouse claims against foreign governments. *Dames & Moore v. Regan*, 453 U.S. 654, 679-80 (1981). In light of this long-standing practice,[3] plaintiffs could not have had a reasonable investment-backed expectation that their claims against Libya would proceed without interference by the Government. *See, e.g., 767 Third Avenue Associates v. United States*, 48 F.3d 1575, 1580-81 (Fed. Cir. 1995) (holding that property owners enjoy their rights "against the backdrop of the government's foreign policy

[3] As the Supreme Court in *Dames & Moore* noted, "[a]t least since the case of the 'Wilmington Packet' in 1799, Presidents have exercised the power to settle claims of United States nationals by executive agreement. In fact, during the period of 1817-1917, 'no fewer than eighty executive agreements were entered into by the United States looking toward the liquidation of claims of its citizens." *Dames & Moore*, 453 U.S. at 679 n.8 (citations omitted).

power. Such a power may rarely be used in the way it was here, but it is part of our legal framework and its existence must be considered in any reasonable expectations analysis."); *see also Beaty*, 556 U.S. at 865 ("The President's elimination of Iraq's later subjection to suit could hardly have deprived respondents of any expectation they held at the time of their injury that they would be able to sue Iraq in United States courts."). With respect to the character of the Government's actions, the foreign relations context of this case makes clear that plaintiffs' claims were inherently susceptible to current political realities – those claims could be altered by the Government at any time, depending on the status of our foreign relations. Finally, with respect to the economic impact of the Government's actions, plaintiffs' claims do not afford them definite property rights – those claims are inherently speculative.

Plaintiffs make a number of arguments in response. With respect to the "expectation" factor, plaintiffs contend that they "invested in their causes of action well after the Terrorism Exception to the FSIA became law" and that they had every right to expect that they would be provided an alternative remedy or forum. Pls' Opp. at 31. The Supreme Court and the Federal Circuit have made clear, however, that, in matters of foreign relations, parties cannot have an expectation of pursuing their claims, so it does not matter what forum plaintiffs believe that they should have been able to access. *Beaty*, 556 U.S. at 865; *Abrahim-Youri*, 139 F. 3d at 1467. That plaintiffs invested in their causes of action after the State Sponsor of Terrorism Exception became applicable to Libya is irrelevant – plaintiffs are charged with the knowledge that the exception could change at any time, just as it did when Libya's sovereign immunity was restored. *Abrahim-Youri*, 36 Fed.Cl. at 486. ("Where such [Government] intrusion is foreseeable, the commitment of private resources to the creation of property interests is deemed to have been undertaken with that risk in mind."). And it would be odd if a party could create a

property right for takings purposes simply by investing in a cause of action, no matter how speculative that cause of action is or regardless of whether it is ever reduced to a final judgment.

With respect to the assertion that plaintiffs expected that the Government would provide them an alternative remedy or forum, aside from the fact that a taking cannot occur when the Government fails to provide something that was never promised, the Federal Circuit has rejected the argument that the failure to provide an alternative forum is sufficient to establish a taking. *See Belk v. United States*, 858 F.2d 706, 709 (Fed. Cir. 1988). And, in *Dames & Moore v. United States*, the Court expressly stated that the President's power does not "depend on his provision of a forum whereby claimants can recover on those claims." 453 U.S. 654, 687 (1981). Indeed, the Supreme Court has made clear that "the Federal Government is not barred by the Fifth Amendment from securing for itself and our nationals priority against such [foreign] creditors. . . There is no Constitutional reason why this Government need act as the collection agent for nationals of other countries when it takes steps to protect itself or its own nationals on external debts." *United States v. Pink*, 315 U.S. 203, 228 (1942).

Thus, plaintiffs' purported expectation in being able to present claims to the Commission is unreasonable given that "governments have traditionally espoused and settled claims without the consent of the nationals holding the claims and 'usually without exclusive regard for their interests, as distinguished from those of the nation as a whole.'" *Shanghai*, 4 Cl.Ct. at 244 (quoting *Dames & Moore*, 453 U.S. at 680). If this is the case with respect to United States nationals, it is doubly true with respect to foreign entities. And when the Government has provided an alternative forum, it is generally for United States citizens. *Shanghai*, 4 Cl.Ct. at 241 ("much of our government's efforts in espousing claims *of its citizens* has been devoted to

establishing fora for such rights, generally in the nature of international commissions or tribunals.") (emphasis added).

Nor could plaintiffs have been surprised by the Commission's decision to apply the "continuous nationality rule" to their claims. As the Commission explained, "the continuous nationality requirement is a matter of customary international law and [] the United States recognizes it as such." Lib-II-161, at 11. Plaintiffs themselves acknowledge that this result was expected "[g]iven the Commissions' guidelines regarding the 'continuous nationality rule' and its numerous and unambiguous rejection of claims by foreign applicants." Compl. ¶ 55. Accordingly, the complete lack of any expectation of recovery is sufficient to dismiss plaintiffs' takings claim. *Good v. United States*, 189 F.3d 1355, 1363 (Fed. Cir. 1999) ("We have previously held that the government is entitled to summary judgment on a regulatory takings claim where the plaintiffs lacked reasonable, investment-backed expectations, even where the challenged government action 'substantially reduc[ed] the value of plaintiffs' property.' Here, too, Appellant's lack of reasonable, investment-backed expectations defeats his takings claim as a matter of law.") (citations omitted); *cf. Lucas v. South Carolina Coastal Counsel*, 505 U.S. 1003, 1027-28 (1992) ("[I]n the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [the owner] ought to be aware of the possibility that new regulation might even render his property economically worthless. . . .").

With respect to the character of the government action, plaintiffs allege that they alone had their causes of action extinguished without an alternative remedy. But plaintiffs' causes of action have not been espoused; rather, Libya's sovereign immunity was reinstated. As the United States explained in the statement of interest filed in the district court case, "[a]lthough claims may not proceed in U.S. courts, the President's actions do not affect foreign nationals'

ability to pursue their claims in foreign courts or through the efforts of foreign governments." *See* Dkt. No. 84, Statement of Interest filed in Case No. 06-731 (D.D.C), at 16 n.30 (citing Executive Order § 1(b)(iii)); *see also Belk*, 858 F. 2d at 709 ("Here there was no physical invasion of property, but only the prohibition on the assertion by the appellants of their alleged damage claims against Iran.").

Plaintiffs also assert that they are not contesting the President's exercise of foreign policy powers. But plaintiffs' complaint is with the decision not to provide plaintiffs with an alternative remedy or forum. Thus, plaintiffs challenge how the Government determined to use those powers – that is, by settling certain claims and allowing certain claimants to pursue claims before the Commission.

Finally, with respect to the economic impact of the Government's actions, plaintiffs contend that their claims "were all but guaranteed to reach a final judgment." Pls' Opp. at 35. Plaintiffs' assertion is contradicted by the Commission's conclusion that "the claimants were never able to convince the court that there was a viable legal theory under which they would in fact prevail. In short, at no point did any court rule that claimants had a valid cause of action or that claimants were entitled to damages, and there is no evidence that a court ever would have." Lib-II-161, at 10, available at http://www.justice.gov/sites/default/files/fcsc/docs/lib-ii-171.pdf. Plaintiffs' reliance on the fact that they obtained a judgment against Syria is not helpful to their argument because the district court entered a default against Syria. *See* Dkt. No. 21, entry of default against Syria in case no. 06-731 (D.D.C.); Dkt. No. 127, plaintiffs' motion for entry of final judgment (noting that the court had "entered defaults" against Syria). In contrast, Libya fully contested the claims against it in that litigation.

III. The Factors Relied Upon By Plaintiffs Demonstrate That No Taking Occurred

Even if the Court were to apply the factors cited by plaintiffs (which, as plaintiffs recognize, are simply an explication of the *Penn Central* factors), those factors demonstrate that no taking occurred. Plaintiffs contend that the following factors are relevant: (1) the degree to which their rights were impaired; (2) the extent to which they were an incidental beneficiary of the Government action; (3) the importance of the public interest to be served; (4) whether the exercise of Government power can be characterized as novel and unexpected or falling within traditional boundaries; and (5) whether the action substituted any rights or remedies for those that it destroyed. Pls' Opp. at 26.

With respect to the first factor, plaintiffs assert that their property interests have been "entirely extinguished." As explained above, however, the Government did not extinguish plaintiffs' claims. Rather, it reinstituted the rule of sovereign immunity that existed when the claims against Libya first arose. Plaintiffs remain free to pursue other available remedies in foreign courts or through foreign governments. Further, plaintiffs do not possess any property right in the Commission's jurisdictional rules or, for that matter, in any jurisdictional rules of sovereign immunity. As the Federal Circuit explains, "[h]ere there was no physical invasion of property, but only the prohibition on the assertion by the appellants of their alleged damage claims against Iran. Although the Algiers Accords did not provide any alternative forum in which the hostages could assert their claims, that fact is not sufficient to establish a taking." *Belk*, 858 F. 2d at 709. This factor supports that no taking occurred.

With respect to the second factor, although plaintiffs may not have directly benefited from the opening of relations with Libya, they certainly were an incidental beneficiary to that result. As commercial entities, they stand to benefit from any improved relationship between

nations. *Shanghai*, 4 Cl.Ct. at 245 ("It is the existence of cordial relations between nations that makes trade possible.").

With respect to the third factor, there can be no dispute that the public interest is served through normalization of our relations with foreign countries. Plaintiffs' contention that there was no public interest in excluding plaintiffs from the settlement presumes that the settlement would have still been achieved had plaintiffs been included. More importantly, "[t]here is no Constitutional reason why this Government need act as the collection agent for nationals of other countries when it takes steps to protect itself or its own nationals on external debts." *Pink*, 315 U.S. at 228. And giving plaintiffs part of the settlement would have reduced the proceeds available for the families of United States citizens who were victims of the terrorist attacks.

Regarding the fourth factor, as explained above, the reinstatement of Libya's sovereign immunity was not novel or unexpected. Similarly, given that plaintiffs had no right to appear before the Commission and given the Supreme Court's view that the United States need not act to protect the interest of foreign entities, plaintiffs cannot have expected that this remedy would be available to them.

With respect to the question of whether any rights or remedies were substituted for those that were destroyed, there were no rights or remedies destroyed as a result of actions asserted by plaintiffs – the failure to provide them with access to the Commission. As explained above, plaintiffs had no right to go to the Commission. And plaintiffs still may pursue other available remedies in foreign courts or through foreign governments.

Finally, in our motion, we raised the question of whether plaintiffs possess standing to bring their claims. In response, plaintiffs simply assert that because they obtained a judgment against Syria in their district court case, they possess standing to bring their claim. But the

property that they assert was taken from them is an alternative forum. Plaintiffs fail to show that they had a right to that forum or, for that matter, to otherwise address the concerns raised by the Commission – that plaintiffs never demonstrated their ownership of the claim.

IV. This Case Presents A Non-Justiciable Political Question

In our motion, we cited this Court's decisions in *Shanghai Power Co. v. United States,* 4, Cl. Ct. 237 (1983), and *Belk v. United States*, 12 Cl. Ct. 732 (1987), in support of the argument that plaintiffs could not assert takings claims because those claims were not susceptible to judicial review.

Plaintiffs' respond by contending that they are not contesting the President's actions but, rather, the decision to exclude plaintiffs' claims from the Commission's jurisdiction. The decision whether to include plaintiffs' claims within the Commission's jurisdiction goes to the heart of the President's foreign affairs powers. In their complaint, plaintiffs explain that the President's Executive Order required the "Secretary of State to establish procedures to compensate those United States nationals for their terminated claims" but "provided no such parallel procedure for the claims of foreign nationals." Compl. ¶¶ 43, 44. Thus, an inquiry into the jurisdiction of the Commission in these circumstances would directly implicate the settlement agreement with Libya and the President's decision regarding which claims to include under that agreement. It would also involve a challenge to the Commission's decision regarding similar claims, which Congress has determined is not subject to judicial review. 22 U.S.C. § 1623(h).

**CONCLUSION**

Accordingly, we respectfully request that the Court dismiss plaintiffs' complaint.

Respectfully submitted,

BENJAMIN C. MIZER
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ L. Misha Preheim
L. MISHA PREHEIM
Senior Trial Counsel
U.S. Department of Justice
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-3087
Facsimile: (202) 514-8640
misha.preheim@usdoj.gov

March 11, 2015

Attorneys for Defendant